*Ulmer & Dowell,* contra.

---

17910. WILKINS, receiver, *v.* FRIEDMAN.

1. Under the revised general statutes of the State of Florida, §§ 3836 and 3837, as proved in the instant case and appearing in the record, a sale of personalty to secure the payment of money is deemed a mortgage, and under the Florida statutes and decisions is held to be a specific lien on the property, and not a conveyance of the legal title or of the right of possession, such as would support a claim. Accordingly, where the planter of certain crops, growing and to be grown in the State of Florida, obtains advances under a Florida contract for the

Banks and Banking, 7 C. J. p. 547, n. 15; p. 548, n. 38 New; p. 549, n. 67 New.

Chattel Mortgages, 11 C. J. p. 406, n. 58; p. 625, n. 44; p. 654, n. 17.

purpose of making such crops, under an oral agreement whereby the planter agrees to deliver the entire crop to the person making the advances, when it matures, at the prevailing market price or at a price to be then ascertained, the purchaser to deduct the advances made from the total purchase price and pay over to the planter the difference, such oral agreement, even if it could be construed as a valid contract of sale to secure advances, and not merely an executory contract to sell (see, in this connection, Civil Code of 1910, §§ 4106, 4125; *Luke* v. *Batts*, 11 *Ga. App.* 783, 76 S. E. 165), under the Florida statute could not pass title in the property to the person making the advances, and could only have the force and effect of a mortgage. See, in this connection, *Lewis* v. *Lofley*, 60 *Ga.* 559. In such a case, where the planter, before the maturity of such crops, executes a mortgage thereon to a third person, which mortgage is properly executed and recorded, the person making the advances under such prior oral agreement takes any portion of the crop delivered to him thereunder subject to the lien of the written and recorded mortgage, and he can not sustain a claim to a portion of such mortgaged crop levied upon by virtue of the foreclosure of the recorded mortgage. Accordingly, the charge of the court complained of which authorized a finding for the claimant on the theory that title to the property passed under such prior oral agreement was erroneous, and necessitates the grant of a new trial.

2. Ordinarily, the president or other executive officer in charge of a bank has no power to bind it except in the discharge of his ordinary duties, *Swindell* v. *Bainbridge State Bank*, 3 *Ga. App.* 365 (60 S. E. 13); and in no event would any such officer or set of officers have authority to bind the bank by a gratuitous waiver or release to a third person of the lien upon property mortgaged to it. But the executive officer in charge of a bank has the power and authority to act for it in the business of collecting its assets, and, in order so to do, and in furtherance of such purpose, may enter upon an agreement with a third person whereby the bank's lien on mortgaged property may be waived or released, when such agreement is founded upon a valid consideration flowing to the bank. It appearing in the instant case that the president of the bank was in fact the executive head of the corporation, and that the agreement made by him on behalf of the bank to release the lien upon property mortgaged to the bank was done in an effort to compromise a doubtful adverse claim and effect a collection of the debt owing to the bank and secured by the mortgage, and that the release was supported by the alleged promise of the purchaser to take either all or a stipulated portion of the mortgaged property at a fixed price in excess of the market value of the commodity, the release thus made and entered upon will be upheld as within the scope of the officer's powers and authority and founded upon an adequate consideration flowing to the bank.

3. Where a mortgagee agrees to release the mortgaged property to a purchaser from the mortgagor upon conditions to be performed by the purchaser, or by the mortgagor, of which the purchaser has knowledge, the release does not become effective, nor is the property discharged from the lien of the mortgage, unless and until performance is made of

the conditions of the release. 11 C. J. 625; Brimm *v.* Long, 22 Kan. 153. See also *Tucker* v. *Mann,* 124 *Ga.* 1003 (53 S. E. 504). In the instant case there was an issue of fact as to the terms of the agreement under which the undisputed release was made, and, consequently, as to whether the terms of the agreement had been complied with by the purchaser. The questions for determination upon a retrial will be what constituted the terms of the release, and whether or not the conditions under which the plaintiff waived the lien of its mortgage have been performed by the claimant so as to render the release or waiver of the mortgage lien binding and effectual.

DECIDED JULY 14, 1927.

Claim; from Decatur superior court—Judge Custer. December 27, 1926.

*John R. Wilson, Y. L. Watson,* for plaintiff in error.

*A. B. Conger,* contra.

JENKINS, P. J.   The First National Bank of Quincy, Florida, held a mortgage executed by D. G. Hutchenson on a certain crop of tobacco and other produce growing in Gadsden County, Florida, which mortgage was dated June 20, 1922. The mortgage was foreclosed, after being recorded in Decatur County, Georgia, and the mortgage fi. fa. was levied upon certain tobacco which had been harvested and was in the possession of L. A. Friedman in the latter county. Friedman filed a claim to the property. On the trial it appeared that Friedman had furnished to Hutchenson the necessary supplies and money to make the crop, which was grown on the latter's land, under an agreement which had been in operation for several years, by which the crop, when matured and gathered, was to be delivered by Hutchenson to Friedman, the latter deducting the advances made and paying over to Hutchenson the balance of the purchase price. No agreement appears to have been entered into as to the price Friedman would pay Hutchenson for the particular crop of tobacco when it was delivered. When the crop matured certain deliveries were made to Friedman by Hutchenson, the tobacco being shipped to him at Bainbridge, Georgia, by truck, when the plaintiff ordered the deliveries stopped. Friedman went to Quincy and discussed the matter with Hutchenson and Key, the president of the bank, who, it appears without dispute, was the executive head of the bank and in charge of its business. It was then agreed between all parties that Friedman should pay a price of sixty-five cents per pound for the tobacco, which price, it is clearly inferable from

Friedman's testimony, was in advance of the market price at the time, the bank consenting, through Key, for the tobacco to be delivered to Friedman. Friedman testified that under the agreement whereby the bank waived its mortgage, he was to take only the sound part of the tobacco at sixty-five cents per pound; while the contention of the bank was that he was to take the entire crop at that price. After the tobacco levied upon had been delivered to Friedman by Hutchenson, the former refused to accept any more, giving as his reason therefor that the tobacco was off grade; whereupon the bank foreclosed its mortgage, and Friedman filed his claim, setting up his contentions with reference to his alleged contract with Hutchenson made prior to the execution of the mortgage, and the alleged release by the bank. The jury on the trial found the property not subject, and the plaintiff filed a motion for a new trial; pending a hearing a receiver was appointed for the bank and made party plaintiff, and the receiver now excepts to the order overruling the motion for a new trial.

*Judgment reversed. Stephens and Bell, JJ., concur.*