No. 28,887.

THE ARKANSAS RIVER GAS COMPANY, *Appellant,* v. ISADOR MOLK, *Appellee.*

(285 Pac. 561.)

Opinion filed March 8, 1930.

*K. M. Geddes,* of El Dorado, for the appellant.
*Richard E. Bird,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action involves the alleged conversion of oil-well casing valued at $2,470.40, and a recovery of that sum with $1,000 as exemplary damages was asked.

On April 18, 1924, the Arkansas River Gas Company brought the action, alleging that it was the owner and had been in the possession of 1,280 feet of 8¼, 32-pound oil-well casing, at a place known as the Leydig farm, and that Isador Molk, defendant, had unlawfully

taken possession of the casing and converted it to his own use. The defendant moved that the Union National Bank be made a party, alleging that he had purchased the casing from that bank, and was given a bill of sale of it. That motion was first allowed and summons was served upon the bank, but shortly afterwards its motion to quash was sustained. Before the summons to quash against the bank was sustained, Molk answered and alleged first denying the ownership of the plaintiff or that he had wrongfully taken possession of it and converted the same to his own use, and in the cross petition stated that he had purchased the casing from the bank, which had represented that it was the owner of it, and further stating that if it should be found that plaintiff was entitled to judgment against the defendant, that it recover judgment against the Union National Bank. The plaintiff claimed that the original owner of the casing, the Broadview Oil Company, sold the casing on October 9, 1923, to J. M. Reynolds, and executed a bill of sale therefor; that Reynolds in turn sold the casing to the plaintiff; that the Union National Bank held a mortgage on the casing executed by the Broadview Oil Company; that the bank had waived its lien under the mortgage; and that the casing was hauled away by the defendant and converted to his own use. The defendant claims that the Broadview Oil Company mortgaged the casing to the Union National Bank; that the indebtedness became due and was unpaid; that the bank foreclosed the mortgage and took possession of the casing; that acting through its agent, Wasson, it sold 1,280 feet of the casing to the defendant and executed a bill of sale for it, and under this authority the defendant took possession of the casing, and he claimed to be the owner thereof. The case was tried to a jury and a general verdict was returned in favor of the defendant. The plaintiff appeals and contends that the verdict is in conflict with the evidence and, further, that some instructions given by the court were misleading and erroneous.

It is insisted that there was no question of fact to be submitted to the jury as to the passing of title, and that the court erred in refusing plaintiff's motion for a new trial. This contention is based largely on the fact that Reynolds had borrowed or obtained other casing from the plaintiff, and in payment therefor had sold the casing and had assigned the bill of sale to the plaintiff, and that before doing so he secured the approval of the bank, which was attached to the bill of sale, and delivered to the plaintiff, who accepted

it in satisfaction of its claim upon Reynolds for casing previously borrowed. The bill of sale of the Broadview Oil Company, executed October 9, 1923, recited that it had received from Reynolds $1,280. This bill of sale was presented to the bank which held the mortgage on the following day, and it placed thereon the following indorsement: "O. K. Union National Bank, by W. B. Harrison, Pt., 10-10-23." It is contended that as a matter of law this O. K. operated as a waiver of a lien or any claim of title to the property and upon the assignment and transfer by Reynolds the plaintiff became the owner of the property.

It appears that the Broadview Oil Company was the owner of the casing and that it had given a mortgage thereon to the Union National Bank. Later the Broadview Oil Company sold the casing to J. M. Reynolds, who, knowing that the Union National Bank had held a mortgage on the casing, went to the banking house, where a bill of sale was executed in the presence and under the supervision of W. B. Harrison, the president of the bank, after which the approval of the bank was indorsed on the bill of sale. The following is a copy of that writing, with the indorsement of the bank and the assignment of the bill of sale and property to the Arkansas River Gas Company:

"BILL OF SALE OF PERSONAL PROPERTY.

"Know all men by these presents, That in consideration of twelve hundred eighty ($1,280) dollars, the receipt of which is hereby acknowledged, we do grant, sell, transfer and deliver unto J. M. Reynolds, heirs, executors, administrators and assigns the following goods and chattels, viz.: Twelve hundred eighty (1,280) feet of 8¼, 32-pound casing, located on northwest quarter (NW¼) of section eighteen (18), township twenty-three (23), range four (4), Butler county, Kansas.

"To have and to hold, all and singular, the said goods and chattels forever. And the said grantor hereby covenants with the said grantee that it is the lawful owner of said goods and chattels; that they are free from all encumbrances; that it has good right to sell the same as aforesaid, and that it will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"In testimony whereof, The said grantor has hereunto set its hand this 9th day of October, A. D. 1923.        (Signed)      THE BROADVIEW OIL CO.,
                                                    By F. B. MANLEY, Pres.

"Executed in the presence of (Signed) O. E. FOULKE.

"O. K. Union National Bank, by W. B. Harrison, Pt. 10-10-23. (Indorsed:) No. ......... Bill of Sale of Personal Property. From................ to ..................

"I hereby assign the within bill of sale to Arkansas River Gas Co.

                                                    "J. M. REYNOLDS."

The determination of the question involved in the action turns on the interpretation of the writing. Did the bank have anything to sell or transfer to defendant, after placing its O. K. on the bill of sale, and thus approving the statements in the writing? It will be noticed that the bill of sale, which purported to transfer the ownership of the casing to Reynolds, contained a guaranty that the seller was the lawful owner of the casing and had the right to transfer it free of all encumbrances. The purchaser desired to have a guaranty from the bank which had held the mortgage, that it was no longer subject to that encumbrance and presented the bill of sale to the bank for a written assurance of that fact. Instead of making a full formal declaration, the bank, through its president, indorsed on it, "O. K. Union National Bank, by W. B. Harrison, Pt. 10-10-23." What was the meaning and force of that indorsement? Defendant insists that the term "O. K." is an equivocal and doubtful expression and should not be regarded as a waiver of a mortgage lien. Few expressions of verification or certificates of approval in business transactions are in more common use than the term "O. K." Although an abbreviation, it is in such common use and is so well understood that there can be no uncertainty as to its meaning. Webster's dictionary defines it "All correct," and the Century Dictionary gives its meaning "All right; correct." In *State v. Construction Co.*, 91 Kan. 74, 136 Pac. 905, which involved a building contract, an O. K. indorsement was made on one of the papers by the architect, and it was held that the term was in accordance with common usage and was a sufficient certificate of the correctness of the estimate upon which it was indorsed. See, also, *Lumber Co. v. Peterson & Sampson*, 124 Ia. 599; 3 Words & Phrases, 2d Ser. 666; 3 Bouvier's Law Dictionary, Rawle's 3d Rev. 2388. As used in this instance there was nothing obscure or uncertain in the term. It was an authentication of the correctness of the statements which preceded the indorsement and a certificate that there was no encumbrance on the casing sold. The bank had held the mortgage on the property and the purchaser wished an assurance from the mortgagee of the correctness of the stipulation that there was no lien on it at the time of the sale. The bank, in order that the sale might be consummated, certified to that fact by placing its O. K. on the declaration that the property was free from encumbrances. The sale being consummated on the faith of its certificate, signed

officially by the president, the bank could not thereafter assert a lien against the buyer or his assignee nor claim ownership through its mortgage.

Whether the bank had released its lien by the indorsement was not a question of fact to be submitted to the jury, but was rather one of law for the determination of the court. Upon the evidence touching the certificate of indorsement by the mortgagee, that it was free from liens, a fact not open to dispute, a valid release was effected of any lien the bank may have had—we think just as effective a relinquishment as if it had executed a formal release of the specific property described in the bill of sale. Thereafter the bank had no right to claim a lien as against the purchaser of the property. As to the property described in the bill of sale, it had nothing to sell to the defendant and, of course, defendant could not acquire any interest in the property from the bank which it had no right to sell. Because this matter of law was submitted to the jury and because of the waiver it must be held that the verdict is not supported by the evidence, and therefore a new trial should have been granted.

Something is said to the effect that there was no separation of the casing sold from that of other sizes on the Leydig farm. The approved bill of sale described the property as of a definite length, weight and size, as well as of its location. It was the manifest intention of the parties that the title to the described casing should pass. The fact that there was other casing of different sizes and weights at the place or even of the same size and weight, would not require a separation of the identified articles where it was the intention of the parties that the title should pass. Nothing remained to be done to ascertain the price or quality of the article sold. They were in a deliverable condition, one in which the buyer was bound to accept them. If there was something to be done to the property by the seller to ascertain the price—as where the price depended upon quality or quantity of the articles of property—selection or separation might be necessary to the passing of title; but in this instance nothing of that kind was necessary, nor was it the intention of the parties that separation or other action remained to be performed. (*Stewart v. Produce Co.*, 88 Kan. 521, 129 Pac. 181, and cases cited.)

It follows that the judgment must be reversed, but a judgment cannot be directed as there remains for trial the question of the

value of the casing taken and appropriated by the defendant. For the trial of that issue the judgment is reversed and the cause remanded.