BENTON HARBOR STATE BANK v. BUBANOVICH.

1. MORTGAGES—FORECLOSURE—RELEASE.

In suit by bank to foreclose mortgage, finding of trial judge that bank agreed to release property involved from blanket mortgage, and that conditions of release had been complied with, *held,* justified by record.

2. SAME—EQUITY.

Bank holding blanket mortgage, which agreed with purchaser of certain of mortgaged property to release it and accept in lieu thereof mortgage on other property conveyed to mortgagor by purchaser, on purchaser's paying enough to reduce loan to certain amount which was paid, is not equitably entitled to enforce lien against property it promised to release, although said release was not executed, and it continued making loans to mortgagor.

3. BANKS AND BANKING—RELEASE OF MORTGAGE—CASHIER'S AUTHORITY—CONSIDERATION.

Bank's contention that cashier's promise to release mortgaged property sold to promisee was not within scope of his authority and was without consideration, *held,* not sustained, where record shows that transaction was within scope of cashier's ordinary duties, that it was called to attention of bank's directors and acted on by them, and that bank received money paid by promisee to reduce mortgagor's loan.

Appeal from Berrien; White (Charles E.), J. Submitted April 15, 1932. (Docket No. 129, Calendar No. 35,916.) Decided June 6, 1932.

Bill by Benton Harbor State Bank against Paul Bubanovich and others to foreclose a mortgage. Cross-bill by defendant Kidd, Dater & Price Company, a corporation, to cancel the mortgage. Decree for cross-plaintiff. Plaintiff appeals. Affirmed.

*Gore & Harvey,* and *A. P. Cady,* for plaintiff.

*Humphrey S. Gray* and *John J. Sterling,* for defendants.

NORTH, J. In November, 1922, plaintiff bank was given a mortgage by the defendants Bubanovich covering several pieces of real estate owned by them in or near Benton Harbor, Michigan. In form this was a blanket mortgage purporting to secure the payment of any indebtedness owing at any time to the bank by the mortgagors or either of them. Mr. Bubanovich then owed the bank $14,000; but the mortgage tax paid seems to have been computed on $10,000 only. On March 27, 1923, Mr. and Mrs. Bubanovich sold the property in suit, known as the Pipestone street block, in Benton Harbor, Michigan, to the defendant Kidd, Dater & Price Company, a corporation. The conveyance was by warranty deed free and clear of all incumbrances. Plaintiff's bill to foreclose its mortgage was filed October 18, 1929, the amount claimed due and unpaid being $9,697. The defendant Kidd, Dater & Price Co. answered and filed a cross-bill, praying cancellation of the mortgage as to the Pipestone street property. Upon hearing in open court, the circuit judge granted the relief prayed in the cross-bill. Plaintiff has appealed.

In the cross-bill it is alleged that at the time the defendant Kidd, Dater & Price Co. were negotiating the purchase of this property from Mr. and Mrs. Bubanovich, the plaintiff agreed:

"That if the said Paul Bubanovich, or the said Kidd, Dater & Price Company, would pay to the said Benton Harbor State Bank the sum of $3,171.94, that it, the said bank, would release the above-described lands and premises from the said mortgage, and the said Kidd, Dater & Price Company would hold said property, if conveyed to it by said Paul Bubanovich, free and clear from the terms, conditions, and covenants contained in the said mortgage as if said property, lands, and premises had never been included therein."

The sum of $3,171.94 was fixed as the payment necessary to reduce Bubanovich's indebtedness to the bank to $9,000. Cross-plaintiff claims that, in consequence of the understanding and agreement between the parties above quoted, it gave its check for $3,171.94 to Paul Bubanovich, and that from the proceeds of this check a payment of $2,375.30 was made to plaintiff. Because of previous payments, this reduced the amount Bubanovich owed the bank to the agreed balance of $9,000. Cross-plaintiff asserts that this payment was made and the transaction closed between it and Mr. and Mrs. Bubanovich in reliance upon the statement of the cashier of the bank that the bank's mortgage would be released on the Pipestone street property upon the payment to the bank of a sum sufficient to reduce the indebtedness of Bubanovich to the bank to $9,000. In this connection there was a further agreement between the bank and Bubanovich that as substituted security for his indebtedness to the bank he would give to it a mortgage covering three

pieces of farm property which he was to receive from Kidd, Dater & Price Co. in part payment of the property he was conveying to it.   Plaintiff claimed the mortgage last above-mentioned was never executed and delivered to it.   On this phase of the case there is a direct conflict between the testimony offered in behalf of the bank and the testimony given by the defendant Bubanovich.   The record of the meeting of the directors of the plaintiff bank of March 26, 1923, hereinafter quoted, indicates that the bank contemplated taking a mortgage on these farm properties; and we think the record justifies the finding of the circuit judge in this connection wherein he states:

"I must conclude, therefore, as a matter of fact, on this record, that on or before March 27, 1923, Bubanovich had executed and delivered to the plaintiff bank, through Mr. Resch (the cashier) the mortgage on the three farms referred to in the directors' record of March 26th."

The sale to Kidd, Dater & Price Co. was evidently preceded by considerable negotiations with the bank as to how the Pipestone street property could be released from the bank's mortgage.   Besides other proof, there is much in the record of the action taken by the bank directors which supports the above-quoted finding of the trial judge.   The following is from the minutes of the directors' meeting of February 13, 1923:

"Paul Bubanovich — blanket mortgage.   The cashier reported that the Indiana Harbor loan would soon be paid, the indorsement upon the mortgage. Moved by F. L. Bradford, supported by L. F. Sutherland, that we release that part of the mortgage covering the Pipestone block if the loan be reduced to $7,000.   On a yea and nay vote all present voted yea."

The minutes of the directors' meeting of March 26, 1923, show:

"Cashier reported that Paul Bubanovich had traded his Pipestone street block for three farms in Van Buren and Cass counties, and desired release of the block from blanket mortgage, replacing same by blanket mortgage on said three farms. Moved by D. B. Sutherland, supported by E. C. Bowlby, that the cashier be authorized to give partial release of our blanket mortgage covering Pipestone street block, substituting for same a blanket mortgage on two said farms of 40 acres each (being first lien) and on 180 acres (subject to first mortgage of $5,000). On a yea and nay vote all voted yea."

Again on April 16, 1923, the cashier of the bank wrote to the bank examiner:

"Paul Bubanovich—reduced to $9,000, since examination. We feel amply secured on this loan, and are confident that Mr. Bubanovich will be able to care for the balance in the near future."

Notwithstanding the mortgage on the farms was not recorded and was not produced at the trial of the case, we think the trial judge was correct in finding that each of the conditions upon which the bank had informed the Kidd, Dater & Price Co. it would release its mortgage on the Pipestone street property and accept in lieu thereof the mortgage covering the three farms was complied with, and that the conduct of the bank was such that Kidd, Dater & Price Co. was justified in relying upon its promise that the mortgage on the Pipestone street property would be discharged. The facts and circumstances disclosed by this record force the conclusion that the bank was well aware that Kidd, Dater & Price Co. assumed that the mortgage on the Pipestone street property was discharged or would be discharged by the plaintiff. Notwithstanding this, the bank con-

tinued to make loans to Bubanovich for a number of years thereafter and to receive from him payments on account from time to time, and at the time of filing its bill of complaint the bank claimed there was due it from Bubanovich $9,697. In the meantime the farm properties against which plaintiff was to have a mortgage lien had been disposed of by Bubanovich. As between plaintiff and Kidd, Dater & Price Co., we think it would be highly inequitable, under the circumstances of this case, to allow the former to enforce this alleged mortgage lien on the property now owned by the latter.

Appellant's contention that even if Kidd, Dater & Price Co. was promised a release of the mortgage by plaintiff's cashier, such promise or agreement was not within the scope of the cashier's authority and was without consideration, cannot be sustained. This record discloses that the transaction was within the scope of the ordinary duties of plaintiff's cashier, and further, the record also discloses that the transaction was called to the attention of the bank directors and acted upon by them. In addition to this the bank received upwards of $2,000 paid to it by Kidd, Dater & Price Co. through Bubanovich, and the record discloses that the cashier knew the source from which the bank received this money. It is difficult to understand how or why Kidd, Dater & Price Co. would have paid this sum of money and taken the pains it did to see that the bank received it from Bubanovich except it was done in reliance upon the understanding and agreement which the defendants assert they had with the bank.

The decree entered in the circuit court is affirmed, with costs to appellees.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.