No. 35,254

RICHARD KENNEDY, *Appellee*, v. THE GLEN COVE MUTUAL INSURANCE COMPANY, *Appellant*.

(118 P. 2d 591)

Opinion filed November 8, 1941.

*C. W. Burch, B. I. Litowich, La Rue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart*, all of Salina, for the appellant.

*Maurice P. O'Keefe, Karl W. Root*, both of Atchison, *C. W. Crossan*, of Kansas City, Mo., and *Bruce Barnett*, of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was brought on a policy of fire insurance to recover for loss of merchandise. Plaintiff prevailed, and defendant appeals.

The petition was based upon the policy which, among other things, provided the policy would be void "if the interest of the insured be other than unconditional and sole ownership. . . . or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage." It is not claimed the petition was demurrable, and other averments therein contained are not of present concern. The answer was based upon three defenses. One of them was that the stock of goods had been mortgaged contrary to the terms of the policy. Another was the stock of merchandise

was sold after the policy was issued and that, under the terms of the contract, the policy was thereby voided. The other defense was that more than one year after the fire plaintiff had instituted an action against the purchaser of the property in which he alleged the sale and delivery of the merchandise to the purchaser and sought recovery of the purchase price, together with interest thereon from the date of sale and delivery, to wit: the *10th day of May, 1932.* The fire did not occur until May 17, 1932. It was alleged such action against the purchaser constituted an election and a bar to the present action on the policy. In the amended reply plaintiff denied the sale and mortgage and stated if any paper designated as a mortgage was ever signed by him it did not constitute a mortgage. The reply further alleged matters designed to constitute a waiver of the ownership provisions of the policy. The reply also denied that plaintiff had made an election of remedies and that the action for the purchase price had been dismissed, without prejudice, and that the defendant in that action had likewise, without prejudice, dismissed his answer and cross petition. It was defendant's contention certain matters pleaded in the reply constituted a departure, and in fact a new cause of action, inconsistent with the theory of ownership alleged in the petition, and that such reply was not filed until five years after the cause of action had accrued, and hence the rights, if any, pleaded in the reply were barred.

Defendant's demurrer to plaintiff's evidence was overruled. That ruling constitutes the first alleged error.

Was the policy invalidated by virtue of a mortgage placed on the merchandise, by the insured? If a mortgage existed it was not established by the best evidence and no showing was made to make other evidence competent upon that issue. At any rate, insofar as plaintiff's evidence was concerned it cannot be said a mortgage existed. The demurrer to plaintiff's evidence was therefore properly overruled insofar as the mortgage feature of the case was concerned.

Was plaintiff the owner of the property at the time of the fire? The petition pleaded the execution and delivery of a one-year policy covering the period from May 5, 1932, to May 5, 1933, and that plaintiff's stock of merchandise was destroyed by fire on the 17th day of May, 1932. Plaintiff introduced the policy and notice of loss. The policy disclosed it was issued on the 5th day of May, 1932, and the evidence showed the fire occurred on the 17th day of

May, 1932. The policy, according to its terms, became void if the interest of the insured at the time of the fire was other than unconditional and sole ownership.

Defendant contends plaintiff's evidence disclosed plaintiff had sold and delivered the merchandise and fixtures in bulk on May 10, 1932, one week before the fire, to one Doerschlag, who owned the building in which plaintiff was operating his garage and accessory business, and that plaintiff, in fact, already had operated the business for Doerschlag one week before the fire occurred.

The testimony of plaintiff touching the sale of the property and his operation of the business for Doerschlag after the sale was uncontradicted. It was as follows:

"A. I and Mr. Doerschlag made that trade—

"Q. Who is Mr. Doerschlag? A. The man that owned that building.

"Q. And you had rented from him, had you? A. I had rented from him.

"Q. I see. Now, you say what? A. He wanted to buy the furniture and fixtures. He said he wouldn't raise the rent on me (but he thought that it ought all to be together. Well, I told him that I didn't want to sell it that way, but I would sell him the whole thing. . . . And, well, he talked on, and he went away. He come back again, then, in a day or two and still talked. We talked on that for, oh, a week or two, and finally—I disremembered what I ask him at the start, but I told him, then, if he would pay them two notes I owed at the bank—

"Q. Amounting to how much? A. $3,000. And release me from back rent that I owed him—

"Q. Of how much? A. $600.

"Q. Yes. A. $600. Well, it was $600 or more, a few dollars more, that I would sell him the business, and so he agreed to do that, and we went up to Mr. Baer—

"Q. Who is Mr. Baer? A. Banker.

"Q. At the First State Bank? A. Yes."

On cross-examination plaintiff in substance testified: The entire building was 75 feet wide and 120 feet long. It fronted west. There was a driveway in the center of the front which ran into the building. There was an office at the front on each side of the driveway. He (plaintiff) had maintained his office on the north side. The office on the south side had not been occupied for some time. Doerschlag had made some improvements on the south side and had done some painting. After their negotiations Doerschlag moved some of the things from plaintiff's office into the south office. He did this moving the day before the fire for Doerschlag. About a day was spent

moving Ford parts to the side of the building in which Doerschlag had his office. Plaintiff further testified on cross-examination:

"Q. Now, Mr. Doerschlag, as a matter of fact, had kind of taken charge of the thing at that time, hadn't he, of this business? A. Yes.

"Q. How long before the fire was it that he took charge of your business? A. He didn't take charge at all. I was running it *for him*.

"Q. How long had you been running it *for him* before the fire? A. Well, I don't remember what day. I agreed to work for two weeks *after* the time *we completed the trade* and if he wanted me any longer he was to pay me for it.

"Q. How long had you been working *under that arrangement before the fire?* A. I should say about a week.

"Q. So that if the fire was on the 17th, you started in about the 11th or 12th? A. Something like that.

"Q. And during that week, you had been running it *for Mr. Doerschlag?* A. Yes." (Emphasis supplied.)

On cross-examination of plaintiff the defendant, without objection by plaintiff, introduced a certified copy of the pleadings in the action filed by plaintiff against Doerschlag in the district court of Ness county to recover from Doerschlag the sum of $3,800, the alleged purchase price of the sale to Doerschlag, together with interest at six percent per annum from the *10th day of May, 1932*, that being the date the petition alleged the sale was made and the merchandise delivered to Doerschlag. That action was commenced June 21, 1933. In his answer Doerschlag denied liability and filed a counterclaim against the plaintiff for past rent in the sum of $630.

The redirect examination of plaintiff discloses the following:

"Q. Mr. Kennedy, in answer to one of Mr. Royce's questions you stated that you were to stay two weeks there and take charge of the building for Mr. Doerschlag? A. Yes, I did.

"Q. And you had been there about a week before the fire? A. I think something like that.

"Q. Did you say in answer to Mr. Royce's question that you were to work for him for two weeks *until* the deal was completed? Was that your statement? A. *No*, for two weeks I was to *run the business* for nothing till this other man he had working with me got onto running it and if he wanted me any longer he was to pay me for it.

"Q. You say the next day after the fire that Doerschlag saw you and told you that the deal was off? A. Yes." (Emphasis supplied.)

As a further part of the redirect examination of the plaintiff he admitted the filing of the suit in Ness county and that he had consulted Mr. Peters, who later became district judge, concerning it, and that he then consulted Mr. Driscoll and that Mr. Driscoll represented him in that action. He also testified that the action had

not been tried and was dismissed, without prejudice, both as to him and as to Doerschlag, and that he had received nothing from Doerschlag for dismissing his action.

Testimony of the plaintiff disclosed the two $1,500 notes which Doerschlag had agreed to pay had not been paid by him and that Doerschlag had not released him from the rent liability.

The instant action was commenced June 16, 1937. For the moment we shall not consider whether the action filed by plaintiff against Doerschlag constituted an election of remedies or, more accurately speaking, a choice of inconsistent substantive rights.

It is defendant's contention its demurrer should have been sustained for the reason plaintiff's uncontradicted testimony discloses the insured property was sold and delivered by plaintiff to Doerschlag on the 10th day of May, 1932, one week before the fire.

Plaintiff, in substance, contends no completed deal was made, the parties were merely negotiating, and further that performance of the terms of the contract under discussion was a condition precedent to the passing of title. Plaintiff places great emphasis on the significance of the word "if" contained in the testimony first quoted herein. He insists it imports a condition precedent. It is true the word is at times so employed. It cannot, however, arbitrarily be accorded that meaning if such meaning is highly inconsistent with the obvious intent of the parties as evidenced by other language or when it is inconsistent with the present and subsequent conduct of the parties and with the construction they themselves have placed upon the transaction.

In a contract of sale of personal property the intent of the parties, as to the time title shall vest, controls. (*Howell v. Pugh,* 27 Kan. 702; *Kingman v. Holmquist,* 36 Kan. 735, 14 Pac. 168; *Barber v. Thomas,* 66 Kan. 463, 465, 71 Pac. 845; *Stewart v. Produce Co.,* 88 Kan. 521, 525, 129 Pac. 181; *Ely v. Gas Co.,* 99 Kan. 236, 242-243, 161 Pac. 649; *Arkansas River Gas Co. v. Molk,* 130 Kan. 30, 34, 285 Pac. 561.) Effect must be given to the real intention of the parties, although this requires a departure from the strict letter of the contract. (55 C. J., p. 215, § 168.) Whether a contract is executory or executed depends primarily on the intention of the parties, to be gathered from the terms of the contract and such surrounding circumstances as may be legitimately considered by the court as evidencing the intention. Effect will be given to words of present transfer when not inconsistent with other circumstances or

provisions evidencing a contrary intention. (23 R. C. L., pp. 1347-1348, § 171; see, also, 23 R. C. L., p. 1328, § 147, and 24 R. C. L., p. 15, § 275.) If the language of a contract of sale is indefinite and ambiguous the construction put thereon by the parties themselves will govern, if the language used will reasonably permit of such construction. (55 C. J. p. 220, § 174.) (See numerous cases annotated under above section references.)

In the same testimony first quoted herein we also find plaintiff's statement, "I and Mr. Doerschlag *made that trade.*" That testimony does not indicate they had merely negotiated for a trade or sale to be completed in the future; it is expressive of an accomplished act. There is other evidence indicating they had not merely negotiated concerning a future sale, but that on the contrary they had agreed on the terms of a present sale. The same testimony first quoted herein contains, also, the words "so he agreed to do that," meaning, of course, that Doerschlag had presently agreed to pay the notes and release the rent account. True, Doerschlag, according to plaintiff, breached his promise, but it does not, therefore, follow there had been no contract of sale.

It is well to observe what the parties actually did pursuant to their agreement between May 10 and May 17, the date of the contract and the date of the fire. In the second quotation of testimony herein it clearly appears the business itself, after May 10, was no longer operated by plaintiff for himself. It was in the possession of Doerschlag. Plaintiff testified it was operated by him for Doerschlag. Then there follows a most significant statement. Plaintiff testified, "I agreed to work for two weeks *after* the time we *completed the trade.*" After May 10, plaintiff, under that arrangement, worked about one week beginning on the 11th or 12th day of May. Plaintiff stated, without qualification, that during this week he had been running the business for Doerschlag. He, therefore, had operated the business for Doerschlag one week *after the trade had been completed.*

It will be observed that on redirect examination an unsuccessful effort was made to have plaintiff substitute the word *"until"* for the word *"after,"* previously employed by the witness. The question and answer was:

"Q. Did you say in answer to Mr. Royce's question that you were to work for him two weeks *until* the deal was completed? A. *No,* for two weeks I was to run the business for nothing, . . ." (Emphasis supplied.)

We need not decide the interesting question whether the action brought by plaintiff against Doerschlag, over a year after the fire, to recover the purchase price of the sale, together with interest from the 10th day of May, 1932, the date plaintiff in that action alleged the merchandise had been sold and delivered, constituted a choice of inconsistent substantive rights. We do say it was additional evidence of the construction plaintiff himself had placed on the contract of sale and delivery. That action was filed June 21, 1933, and was not dismissed until September 7, 1936.

Touching the question of delivery, it will be noted there was no contract requirement that plaintiff was to deliver the merchandise, furniture or fixtures to some other location or that plaintiff was even required to move them to some other portion of Doerschlag's building. Doerschlag was in possession and was operating the business. It is true Doerschlag moved some of the furniture and some merchandise to his office south of the driveway, the day before the fire. Plaintiff was then working for Doerschlag, and according to plaintiff's testimony, he did the moving for Doerschlag.

No conflicting testimony of witnesses is here involved. It is all plaintiff's own testimony. In view of that testimony, coupled with the acts and conduct of the parties, including the construction plaintiff placed upon the transaction as a completed sale, we have concluded title to the merchandise passed on the 10th day of May, 1932.

Plaintiff places much stress upon a certain portion of a rider attached to the policy. The rider provides:

"MERCANTILE STOCK AND FIXTURES FORM

1 $3,000 On stock of merchandise consisting chiefly of tires, auto parts, accessories and tools and electric appliances of every description, and such other merchandise as is usually kept for sale in accessory stores; and, provided the insured is legally liable therefor, this item shall also cover such merchandise held in· trust, or on commission, *or sold but not delivered;* all only while contained in the one story Rubberoid roof brick and tile building, occupied as a garage and filling station situated lots 15-17, block 32, No. 420 Vermont, city of Ransom, state of Kansas." (Emphasis supplied.)

Plaintiff contends even if the property had been sold it had not been delivered and hence he is entitled to recover. We have concluded there was delivery. It is therefore unnecessary to indulge in an exposition relative to the particular purpose and intent of the italicized provision in the rider.

Plaintiff also urges the contract was not completed for the reason he had not worked for defendant the entire two weeks before the fire occurred. Manifestly he had not. He could not do so when the fire destroyed the property. The situation is not analogous to cases in which the seller is required to do further work on merchandise to prepare it for delivery, as urged by plaintiff. Nothing remained to be done on this merchandise by plaintiff. Plaintiff's failure to work the second week, so far as the instant record discloses, was due to no fault of his own. Nor is there anyone here complaining of his failure to work a second week, except plaintiff himself, and that position is inconsistent with the interpretation he placed upon the contract of sale from the time he sued Doerschlag, and at least until he dismissed that action, without prejudice, in September, 1936.

Plaintiff claims the provision of the policy which required the interest of the insured in the property to be that of unconditional and sole ownership was waived by defendant's agent at the time the policy was delivered. In his testimony in chief he sought to introduce evidence which he claimed disclosed such waiver. Objection was made thereto by defendant on the grounds: Plaintiff had not asked for reformation of the policy he had accepted; plaintiff sued on the policy as issued and delivered to him, as the insured; he introduced that policy as the basis of his action; the agent, under express terms of the policy, could not waive the policy provision; the reply and amended reply in which plaintiff first set forth the alleged acts of waiver were filed respectively on September 3, 1937, and April 30, 1940, more than five years after the cause of action had accrued; the acts of waiver alleged constituted a departure from the contract pleaded in the petition and in fact constitute a new cause of action; the new cause of action was barred.

The objection was sustained. No cross-appeal was taken from that ruling. Seven months after the close of the trial, but before judgment had been rendered, plaintiff moved to have the case reopened to introduce evidence relating to the alleged waiver. The motion alleged plaintiff had intended to introduce such evidence on rebuttal, but by inadvertence had failed to do so, thinking the evidence had been introduced. Over defendant's objection the case was reopened and the testimony was admitted, as a part of plaintiff's rebuttal testimony. The demurrer to plaintiff's evidence was of course leveled against plaintiff's testimony in chief, and not against

that testimony plus rebuttal evidence. But we may pass that feature of the case.

In connection with the argument whether the case should be re-opened, plaintiff continued to contend he was, in fact, the owner of the property at the time the policy was delivered. The testimony designed to disclose waiver of the ownership provision was admitted over objection. The testimony pertained to a conversation between plaintiff and the local agent at the time the policy was delivered. Plaintiff's testimony was:

"And I says to him, I says, 'Well, John, I told you that I didn't want that policy, that I was *going to sell it* to Doerschlag without the insurance.' He said, 'Doerschlag told me to bring it in and give it to you and he would pay the premium.'" (Emphasis supplied.)

We do not deem it necessary to discuss the various theories upon which defendant contends this evidence was incompetent. It is sufficient to note that even under this testimony it is not claimed plaintiff told defendant's agent the property had then been sold to Doerschlag. The question whether Doerschlag might recover on the policy is not before us and is not now our concern.

The demurrer to plaintiff's evidence should have been sustained. Having reached this conclusion, we need not consider other alleged errors. The ruling on the demurrer is reversed and the cause remanded to the district court with instructions to enter judgment for defendant.

HARVEY, J., dissents.