383 P.2d 849

**IDAHO BANK OF COMMERCE, a corporation, Plaintiff-Respondent,**

v.

Charles CHASTAIN, R. M. Chastain, Frances C. Chastain and R. A. Chastain, Individually and as partners, doing business under the firm name and style of R. M. Chastain & Sons, Defendants,

and

James S. Johnston, Defendant-Appellant.

No. 9221.

Supreme Court of Idaho.

July 19, 1963.

Anderson & Beebe, Blackfoot, for appellant.

Rigby & Thatcher, Rexburg, for respondent.

TAYLOR, Justice.

In 1958 R. M. Chastain & Sons, a partnership, was engaged in sheep raising and contracting. October 8th of that year the partnership executed and delivered to plaintiff (respondent) a chattel mortgage to secure the payment of a loan in the amount of $60,000. January 16, 1961, the balance of the obligation amounted to $23,593.16, and was evidenced by a renewal note bearing that date, and maturing March 1, 1961. This action for the foreclosure of the mortgage was commenced May 1, 1961. All of the defendants except James S. Johnston (appellant) defaulted and judgment was entered against them September 11, 1961.

Johnston answered, claiming title to two HD21 Allis-Chalmers tractors and the attachments thereon, free and clear of the lien of plaintiff's mortgage. All of the remaining property, except the tractors, was sold under the judgment of September 11th and the proceeds, amounting to something in excess of $8,000, was applied in reduction of the judgment.

The cause as against Johnston was tried to the court without a jury May 17 and 18,

1962. Pursuant to suggestion of the court and agreement of counsel, defendant Johnston assumed the affirmative, and the burden of proving his claim to the tractors. Plaintiff's note and mortgage, having been admitted in evidence at the time of the entry of default judgment, no evidence was offered by plaintiff on the hearing as against Johnston. At the close of Johnston's evidence, plaintiff moved for judgment against Johnston. The court granted the motion, treating it as one for nonsuit. However, on June 4th following, the court made and entered findings of fact, conclusions of law, and judgment, granting plaintiff foreclosure of its claimed lien on the two tractors, ordering a sale and application of the proceeds on the judgment, and requiring defendant Johnston to account for the use of the tractors from and after July 21, 1961.

This appeal is from the judgment.

Chastains have been adjudged bankrupt.

Since there is no issue remaining in the case involving the partnership, and since Charles Chastain was the managing partner and executed the partnership documents on behalf of the partnership, reference herein to Charles Chastain will include the partnership.

The facts are summarized as follows:

The plaintiff, Idaho Bank of Commerce, at the times involved, was a corporation engaged in the business of banking at Rexburg, Idaho. The Bank of Commerce was a corporation engaged in the banking business at Idaho Falls, Idaho. S. M. Mcikle, Sr., was the president and general manager of both banks. Meikle died in August, 1960.

In 1956 Chastain purchased the two HD21 tractors on conditional sales contracts from the Southern Idaho Equipment Company at Idaho Falls. The tractors, along with other heavy equipment, were being used by Chastain in the execution of construction contracts entered into by Chastain. One of these was a subcontract with Diversified Builders involving construction work at the site of the National Reactor Testing Station west of Idaho Falls. This contract had been assigned by Chastain to the Southern Idaho Equipment Company to secure payments as they came due on contracts executed by Chastain for the purchasing and leasing of equipment.

In the early spring of 1960 Chastain was unable to continue the financing of his contracting business. His contracts with the equipment company were in default, and that company was threatening repossession of the two HD21 tractors and an HD15 tractor. Chastain was leasing the HD15 on a contract which gave him an option to buy the tractor and apply the rental payments on the purchase price. At the time Chastain owed $13,000 rent and the balance required to purchase the tractor was $13,479.18.

Plaintiff refused further to finance Chastain's operations. Chastain then suggested

to Meikle that perhaps his, Chastain's, friend Johnston would help him. Johnston was the owner of an extensive farming business in Bingham county. At Meikle's suggestion Chastain and Johnston met with Meikle at The Bank of Commerce in Idaho Falls. Meikle suggested that The Bank of Commerce would finance Johnston's farming operations and loan Johnston sufficient money to pay off the conditional sales contracts and the contract for the HD15 tractor and enough in addition to provide operating expenses for Chastain, if Johnston would give security for the loan, and in turn loan the needed funds to Chastain. This was agreed to. The bank loaned Johnston $28,000 secured by a chattel mortgage on his crops, livestock, farming and other equipment. Johnston then agreed to loan $25,000 to Chastain, for which he requested security. At Meikle's suggestion, Chastain gave Johnston a bill of sale transferring the HD21 tractors and the HD15 tractor to Johnston. This bill of sale was typed at the bank by Meikle's secretary, under his direction, and recites as follows:

"And the said party of the first part does vouch to be the true and lawful owner of the said Goods, Chattels and Property, and have in full power, good right and lawful authority, to dispose of said Goods, Chattels and Property, in manner as aforesaid: And I do, for my heirs, executors and administrators, covenant and agree to and with the said party of the second part, to Warrant and Defend the said Goods, Chattels and Property to the said party of the second part, his executors, administrators, and assigns, against the lawful claims and demands of all and every person and persons whomsoever."

Further, at the suggestion or direction of Meikle, Johnston listed the three tractors as assets in the financial statement required by the bank, and which was prepared at the bank; and, as further suggested or directed by Meikle, Johnston included the three tractors in the chattel mortgage which he gave to the bank to secure the loan. The chattel mortgage was prepared at the bank by the cashier under the direction of Meikle and contains the following:

"It is covenanted and agreed by the mortgagor that the mortgagor is the sole and lawful owner of the property herein described, and has, and is entitled to, the exclusive possession thereof; that the same is free of all encumbrance, and the mortgagor has full power and authority to convey and mortgage the same, and that the mortgagor will warrant and defend the same against the lawful claims and demands of all persons whatsoever * * *."

The conditional sales contracts covering the HD21 tractors had been assigned by the equipment company to The Idaho First Na-

tional Bank. The balance due thereon was $7,055. The contract covering the HD15 tractor was held by the equipment company. Johnston disbursed the $25,000 loaned to Chastain by three checks, one for $7,055 payable to The Idaho First National Bank and Chastain, one for $13,479.18 payable to the equipment company and Chastain, and one for $4,465.82 payable to Chastain. The first two checks were endorsed by Chastain and delivered to the other respective payees. The conditional sales contracts and the rental contract on the HD15 tractor, together with the subcontract with Diversified Builders, were surrendered by the equipment company and held in connection with the Johnston account at The Bank of Commerce. The Diversified Builders' subcontract was assigned by Chastain to Johnston and the bank. It was agreed that payments received on the subcontract would be divided equally between the bank and Johnston.

Johnston advised Meikle and Chastain that he could defer payment of his fertilizer account until October 15th, but it would be necessary for him to have repayment of the moneys he was lending to Chastain for the payment of that obligation not later than October 15th. Chastain accordingly gave Johnston his note for $25,000, maturing at that time. It was agreed that Chastain would have possession and use of the three tractors to enable him to continue with his construction jobs and thus earn the moneys

required to pay his obligations to the bank and to Johnston. It was further agreed that should he pay the note to Johnston in full by October 15th, the tractors would become his property.

A short time later it became apparent that Chastain was handicapped in his operations by reason of the fact that he had no scrapers. Johnston, in an attempt to further aid him, sought and obtained permission of the bank to transfer the HD15 to the equipment company as a down payment on two motor scrapers, for Chastain's use. Chastain was to make payments as they matured on the conditional sales contracts for these scrapers. Ultimately the scrapers were repossessed by the equipment company after Johnston himself had paid a total of $18,000 on the payments accruing thereon.

About two weeks after the $25,000 loan by Johnston to Chastain, Chastain faced another financial crisis, making a further loan to him of $10,000 imperative. Meikle contacted Johnston and arranged to have him loan an additional $10,000 to Chastain, which The Bank of Commerce made available by an additional loan of that amount to Johnston. At that time it was agreed the first $10,000 received by Chastain on the Diversified Builders' subcontract would be paid to Johnston to retire this additional loan. The amount due and to become due to Chastain on the subcontract with Diversified Builders was not as great as the par-

ties thought. Out of subsequent payments received therefrom, and after releasing portions of such payments from the assignment, to enable Chastain to continue operation, Johnston ultimately received $9,000 and the bank $3,000.

■ It is defendant (appellant) Johnston's contention that the plaintiff, Idaho Bank of Commerce, in this transaction, as conducted and directed by its president and general manager, released or waived the lien of its mortgage on the two HD21 tractors, or had become estopped to assert its prior lien as against the defendant Johnston. There can be no question here as to the authority of Meikle in the premises. He was not only president of plaintiff, he was its general manager. And the bank received $3,000 from the further operations of Chastain made possible by the waiver. Wilde v. Zimmerman, 46 Wyo. 530, 30 P.2d 148; Wilkins v. Friedman, 37 Ga.App. 141, 139 S.E. 113; Benton Harbor State Bank v. Bubanovich, 259 Mich. 150, 242 N.W. 870; Homesteaders' Life Ass'n v. Salinger, 212 Iowa 251, 235 N.W. 485; Martin v. Webb, 110 U.S. 7, 3 S.Ct. 428, 28 L.Ed. 49; Anno. 11 A.L.R.2d 1305, 1327, et seq.; 9 C.J.S. Banks & Banking § 207, p. 448.

No release of the lien as to the tractors was ever executed. Chastain testified that at one time during the course of the transaction between himself, Meikle and Johnston (which covered several days) Meikle had Chastain's file from the Rexburg bank in his possession at the bank in Idaho Falls, and that he, Chastain, suggested that Meikle could execute a release of the mortgage on the tractors at that time; to which Meikle responded, " 'Yes, I can take care of that, I'll handle that.' " Johnston testified he had not heard Meikle say anything about a release, or whether he would or would not release anything from the mortgage held by the Rexburg bank.

"The mortgagee of personal property shall not be held to have waived the lien of such mortgage by consenting to a sale of the mortgaged property by the mortgagor unless the fact of such consent be expressed in some writing signed by the mortgagee or be established by a preponderance of the evidence other than the evidence of interested parties." I.C. § 45–1116.

■ No "writing signed by the mortgagee" is shown. However, the evidence is quite conclusive, without the testimony of Chastain and Johnston (regarding them as interested parties, although at the time of trial Chastain no longer had any financial interest in the transaction), that the plaintiff bank through its president and general manager, Meikle, intended to waive, and did waive, the lien of its mortgage in favor of defendant Johnston. Meikle's stenographer and secretary, an employee of the Idaho Falls bank, testified that she typed the

bill of sale from Chastain to Johnston "under the direction of Mr. Meikle." R. J. Smith, who was at the time vice president and cashier of the Idaho Falls bank (and who succeeded Meikle as president and general manager), testified that Meikle was president and general manager of both banks at the time of the transaction and that he, Smith, upon instructions from Meikle, prepared the mortgage given by Johnston to the Idaho Falls bank, and the assignment of Chastain's subcontract with Diversified Builders. The testimony as to the preparation and execution of these documents at the suggestion and under the direction of Meikle, together with the documents themselves, shows that Meikle knew the purpose was to give Johnston security for the repayment of the loan he was making to Chastain; that Meikle knew the mortgagor, Chastain, was transferring the title to the tractors to Johnston; that the mortgagor, Chastain, by the terms of the bill of sale, was representing to Johnston that he had "full power, good right, and lawful authority to dispose of the" tractors and warrant the title thereto. See Arkansas River Gas Co. v. Molk, 130 Kan. 30, 285 P. 561. These documents likewise show that Meikle recognized the transfer of title to Johnston. At his suggestion and direction the two tractors were listed as assets in Johnston's financial statement, upon the basis of which the Idaho Falls bank, through Meikle, loaned Johnston $28,000 se-cured by his mortgage by which the tractors were encumbered and by which Johnston represented that he was "the sole and lawful owner" thereof, and that the tractors were "free of all incumbrance", and that Johnston had "position, power and authority to convey and mortgage the same", and that Johnston warranted his title thereto. Thus, Meikle knew that the transaction agreed upon by himself, Chastain and Johnston, could not be fully executed, nor the purpose thereof effected, without a waiver by the Rexburg bank of its first lien on the tractors in favor of Johnston. See Grover v. Idaho Pub. Utilities Comm., 83 Idaho 351, 364 P.2d 167; Independent Gas & Oil Co. v. T. B. Smith Co., 51 Idaho 710, 10 P.2d 317; Smith v. Washburn-Wilson Seed Co., 40 Idaho 191, 232 P. 574; Hawkins v. Smith, 35 Idaho 349, 205 P. 188; 14 C.J.S. Chattel Mortgages § 327.

A release of the tractors from the encumbrance of the mortgage was unnecessary to the purpose of the transaction. The parties contemplated that Chastain would have sufficient earnings available to pay Johnston's loan in full by October 15th. In that event title to the tractors would have reverted to Chastain and have again become a part of the security available to the plaintiff under its mortgage. A waiver or subordination of plaintiff's lien in favor of defendant Johnston was all that was required to accomplish the purpose of the contracting parties.

■ From the language used by the court in granting plaintiff's motion for nonsuit, it appears the court took the view that a release of plaintiff's mortgage on the tractors was essential to defendant's case, and that defendant having failed to establish such a release, the plaintiff was entitled to judgment. The court reasoned that Meikle, as president and manager of the plaintiff bank, would not release or waive its security at a time when the sufficiency of such security was doubtful. In this connection it must be noted that plaintiff, or Meikle, its manager, was unwilling to risk more money in backing Chastain, and that had not Johnston come to his aid, the bank would have had to advance more money, or see Chastain lose his equipment, his earning power and ability to pay the balance owed by him to the bank. Thus, there was good and sufficient consideration flowing from Johnston to the bank to support a waiver of the bank's lien on the tractors in order to make them available as security for Johnston's loan. We do not infer that consideration was necessary in this case, because the waiver arose out of conduct. In such case it partakes of the nature of an estoppel and no consideration is necessary. 92 C.J.S. Waiver, pp. 1051, 1052.

We conclude that the record, as it existed, at the close of the defendant's evidence, does not support the judgment in favor of the plaintiff.

■ Moreover, even though the evidence had not shown a waiver by the bank in favor of defendant, the facts establish a subrogation of Johnston to the title and right of the Southern Idaho Equipment Company under the conditional sales contracts. It was, in fact, Johnston who paid the balance due on those contracts. He was in no sense a volunteer. He had agreed to make a loan on the security of the title to the tractors. Plaintiff, through its president and general manager, was the guiding hand in, and a party to, the entire transaction, and cannot now be heard to complain or object to the subrogation of Johnston to the position held by the equipment company as the conditional seller. 83 C.J.S. Subrogation § 31. See also Martin v. Hickenlooper, 90 Utah 150, 59 P.2d 1139, 107 A.L.R. 762, where the Utah court quoted from Kent v. Bailey, 181 Iowa 489, 164 N.W. 852, 853, as follows:

" 'The books agree that subrogation is not founded on contract or privity or strict suretyship, but is born of equity, and results from the natural justice of placing the burden where it ought to rest. The remedy depends upon the principles of justice, equity, and benevolence to be applied to the facts of the particular case. It is of equitable origin, adopted to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.' " 59 P.2d at 1140.

The judgment is reversed and the cause is remanded with directions to deny plaintiff's motion for dismissal, to reinstate defendant Johnston's cross-claim, and permit plaintiff to offer any defense it may have thereto.

Costs to appellant.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.