853 P.2d 553

**FRONTIER FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff–Respondent,**

v.

**Harlan D. DOUGLASS and Maxine H. Douglass, husband and wife; and Steven J. Hassing, a single man, Defendants–Appellants.**

**No. 18748.**

Supreme Court of Idaho,
Boise, October 1992 Term.

April 23, 1993.

Rehearing Denied June 18, 1993.

Cooke, LaManna, Smith & Cogswell, Sandpoint, Delay, Curran, Thompson & Pontarolo, P.S., of Spokane, WA, and Elam, Burke & Boyd, Boise, for defendants-appellants. Joseph P. Delay argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, and Stoel, Rives, Boley, Jones & Grey, Boise, for plaintiff-respondent. Dale G. Higer argued.

McDEVITT, Chief Justice.

### BACKGROUND AND PRIOR PROCEEDINGS

On February 3, 1989, respondent, Frontier Federal Savings and Loan Association ("Frontier"), filed a complaint against appellants, Harlan D. Douglass, Maxine H. Douglass, and Steven J. Hassing ("Douglass and Hassing"). Frontier alleged that Douglass and Hassing executed a note and deed of trust upon certain real property in Kootenai County, Idaho, dated October 3, 1985, to secure indebtedness to Frontier in the amount of $1,300,000.00. On July 1, 1988, Frontier alleged that Douglass and Hassing failed to pay the monthly installment due on the note. As a result, Frontier effected a nonjudicial foreclosure of the deed of trust, and held a trustee's sale on February 2, 1989. At the time of sale, Frontier alleged the following amounts due on the note: (1) principal in the amount of $1,293,608.21; (2) interest in the amount of $84,536.49; and (3) late charges in the amount of $3,211.88. In addition, Frontier alleged that it incurred the following expenses: (1) taxes and insurance on the real property in the amount of $4,235.37; (2) trustee fees and costs in the amount of $4,094.30; (3) appraisal fees in the amount of $3,200.00; and (4) attorney fees in the amount of $600.00.

Frontier purchased the real property at the trustee's sale for $869,000.00. Applying this figure and the $20,606.01 in net rents received from the property to the above-listed amounts due and fees and costs incurred, Frontier alleged that Douglass and Hassing still owed $500,680.24 plus interest from February 2, 1989, to Frontier. Frontier also requested $25,000.00 in attorney fees pursuant to the term of the note.

After the complaint was filed, both parties moved for summary judgment. The district court granted Frontier's motion for summary judgment, and entered an order requiring Douglass and Hassing to pay Frontier $241,811.46, interest at $36.65 per day from May 1, 1990, until the date of the judgment, and attorney fees and costs.

### ISSUES RAISED ON APPEAL

Douglass and Hassing raise a number of issues on appeal to this Court. First, they argue that Frontier (the beneficiary) was precluded from recovering a statutory deficiency judgment allowed by I.C. § 45–1512 by waiver or estoppel because the notice of trustee's sale stated that "[t]he beneficiary elects to sell or cause the trust property *to be sold to satisfy said obligation....*" (Emphasis appellant's.) Second, they argue that the sale was invalid, precluding a deficiency judgment, due to multiple violations of the nonjudicial deed of trust foreclosure statute. In this regard, Douglass and Hassing point to the following:

1. Frontier failed to nominate First American Title Insurance Company ("First American") as successor trustee to Pioneer Title Company ("Pioneer") in writing pursuant to I.C. § 45–1504(2), *after* Pioneer's resignation as trustee on September 7, 1988;

2. Frontier failed to obtain Pioneer's resignation by failing to serve notice of intention to appoint a successor trustee upon Pioneer and Douglass and Hassing, pursuant to I.C. § 45–1504(2);

3. Frontier requested that notice of default be issued by First American when it was not the trustee, rather than by Pioneer;

4. The appointment of First American as trustee was made before the resignation of Pioneer as evidenced by the order in which they were recorded;

5. Frontier failed to deposit the deed of trust and note with the trustee as required under the terms of the deed of trust;

6. The trustee's deed provides that "the beneficiary made demand upon said Trustee to sell said property pursuant to the terms of said deed of trust." Frontier failed to make such demand upon Pioneer, and any such demand made on First American was not made on the then-existing trustee;

7. The trustee's deed certification of acknowledgment was defective because one signator did not sign in the presence of a notary;

8. The trustee's deed was void because it was not executed by the trustee because of improper resignation and appointment; and

9. The trustee breached its fiduciary relationship with Douglass and Hassing under the deed of trust by acting solely for and on behalf of Frontier.

Further, Douglass and Hassing argue that the district court erred in calculating damages, that this Court should reverse the district court based upon I.R.C.P. 54(d), 54(e), and I.C. §§ 12–120 or 12–121, and that if this Court reverses the district court, they are entitled to attorney fees and costs on appeal pursuant to I.A.R. 41. Finally, Frontier requests attorney fees on appeal.

### ANALYSIS

A. *Argument Regarding Waiver and Estoppel.*

■ The thrust of Douglass and Hassing's argument goes to the language of the notice of trustee's sale and similar language in the notice of default: "[t]he beneficiary elects to sell or cause the trust

property to be sold to satisfy said obligation." Essentially, Douglass and Hassing are saying that Frontier has waived or is estopped from asserting its right to a deficiency judgment, as set forth in I.C. § 45–1512, because the relevant language in the notice of trustee's sale and notice of default provides that the sale of the property will *satisfy* the obligation.

Idaho Code § 45–1505 (1957)[1] sets forth the conditions under which the trustee may foreclose a trust deed by advertisement and sale. It provides:

**45–1505. Foreclosure of trust deed, when.**—The trustee may foreclose a trust deed by advertisement and sale under this act if:

(1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in mortgage records in the counties in which the property described in the deed is situated; and

(2) There is a default by the grantor or other person owing an obligation the performance of which is secured by the trust deed or by their successors in interest with respect to any provision in the deed which authorizes sale in the event of default of such provision; and

(3) The trustee or beneficiary shall have filed for record in the office of the recorder in each county wherein the trust property, or some part or parcel, is situated, a notice of default identifying the deed of trust by stating the name or names of the trustor or trustors and giving the book and page where the same is recorded, or a description of the trust property, and containing *a statement that a breach of the obligation for which the transfer in trust security has occurred, and setting forth the nature of such breach and his election to sell or cause to be sold such property to satisfy such obligation;* and a copy of such notice by registered or certified mail to any person requesting such notice of record as hereinafter provided.

(4) No action, suit or proceeding has been instituted to recover the debt then remaining secured by the trust deed, or any part thereof, or if such action or proceeding has been instituted, the action or proceeding has been dismissed.

(Emphasis added.)

Idaho Code § 45–1512 permits a beneficiary under a deed of trust to seek a deficiency judgment after a trustee's sale under a deed of trust. It provides:

**45–1512. Money judgment—Action seeking balance due on obligation.**—At any time within 3 months after any sale under a deed of trust, as hereinbefore provided, a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security, and in such action the plaintiff shall set forth in his complaint the entire amount of indebtedness which was secured by such deed of trust and the amount for which the same was sold and the fair market value at the date of sale, together with interest from such date of sale, costs of sale and attorney[ ] fees. Before rendering judgment the court shall find the fair market value of the real property sold at the time of sale. The court may not render judgment for more than the amount by which the entire amount of indebtedness due at the time of sale exceeds the fair market value at that time, with interest from date of sale, but in no event may the judgment exceed the difference between the amount for which such property was sold and the entire amount of the indebtedness secured by the deed of trust.

■ The above-quoted statutes, I.C. § 45–1505 (1957) and I.C. § 45–1512, were both enacted in 1957 as part of an act relating to deeds of trust. *An Act Relating To Deeds Of Trust,* ch. 181, §§ 5, 12, 1957 Idaho Session Laws 345, 347, 351–52. Thus, these statutes are *in pari materia* and must be construed together as parts of the act. *Curtis v. Canyon Highway Dist. No. 4,* 122 Idaho 73, 82, 831 P.2d 541, 550

---

1. Idaho Code § 45–1505 was amended, for the first time, in 1990, ch. 401, § 1, 1990 Idaho Session Laws 1122. Since the nonjudicial fore- closure in this case occurred prior to this amendment, we apply the 1957 version of I.C. § 45–1505.

(1992); *Achenbach v. Kincaid,* 25 Idaho 768, 775, 140 P. 529, 531 (1914).

■ Subdivision (3) of I.C. § 45–1505 requires that the trustee or beneficiary file a notice of default identifying the deed of trust and containing, among other things, a statement setting forth his or her "election to sell or cause to be sold such property to *satisfy* such obligation." (Emphasis added.) Douglass and Hassing argue that the relevant language of the notice of trustee's sale and notice of default, regarding Frontier's election to sell the property to *satisfy* the obligation, is inconsistent with I.C. § 45–1512, resulting in Frontier waiving or being quasi-estopped from asserting its right to seek a deficiency judgment. However, it is clear that the relevant language in the notice of trustee's sale and notice of default is required by I.C. § 45–1505(3). It is well settled that "[w]aiver is a voluntary, intentional relinquishment of a known right or advantage." *Tiffany v. City of Payette,* 121 Idaho 396, 403, 825 P.2d 493, 500 (1992), quoting *Brand S Corp. v. King,* 102 Idaho 731, 734, 639 P.2d 429, 432 (1981). Nothing in the record before this Court establishes that Frontier voluntarily and intentionally relinquished its right to seek deficiency judgment.

We must construe I.C. §§ 45–1505 and 45–1512 together, since they are both parts of the same act, directly relating to the same subject matter. If Douglass' and Hassing's argument were correct, I.C. § 45–1505(3) would render I.C. § 45–1512 meaningless. Every time a beneficiary or trustee complied with the requirements of I.C. § 45–1505(3), they would not be permitted to seek deficiency judgment after the sale because, as appellant argues, they would have agreed to accept the amount received at the sale in full satisfaction of the obligation. In order for quasi-estoppel to apply, Frontier would have had to have taken an earlier position, with knowledge of the facts and its rights, inconsistent with its later position that it was entitled to seek deficiency judgment, to the detriment of Douglass and Hassing. *KTVB, Inc. v. Boise City,* 94 Idaho 279, 282, 486 P.2d 992, 994 (1971). The record clearly shows that Frontier complied with the relevant statutes. In other words, Frontier's actions evidence its intent to follow the statutory scheme so that it could seek a deficiency judgment on Douglass' and Hassing's note obligation.

B. *Argument Regarding Multiple Violations of the Nonjudicial Deed of Trust Foreclosure Statute, I.C. § 45–1504.*

Douglass and Hassing essentially argue that there were cumulative errors made by Frontier and, these errors, taken *in toto,* require this Court to reverse the district court. Our review of the record, however, establishes that none of the alleged errors are violations of the statute.

Subdivision (2) of I.C. § 45–1504 provides:

(2) In the event of death, dissolution, incapacity, disability or resignation of the trustee, the beneficiary may nominate in writing another qualified trustee. Provided, however, that the beneficiary may, for any reason obtain the resignation of the trustee by serving upon the trustee and the grantor in the deed of trust, at their last known address, a notice of intention to appoint a successor trustee. Said notice shall be given by registered or certified mail, and twenty (20) days after the date of mailing the notice of intention to appoint a successor trustee the beneficiary may nominate a successor trustee. Upon recording in the mortgage records of the county or counties in which the trust deed is recorded of the appointment of a successor trustee, the successor trustee shall be vested with all of the powers of the original trustee. Provided that a trustee may not be changed at the beneficiary's nomination after foreclosure has commenced by the filing of the notice of default and is proceeding timely.

As to Douglass' and Hassing's first assignment of error, regarding the nomination of First American as successor trustee to Pioneer, we find no error. The record clearly shows that Pioneer voluntarily resigned as trustee on September 7, 1988,

and First American was appointed successor trustee on the same day. Frontier's actions in this regard comply with the language of the statute.

■ Douglass' and Hassing's second assignment of error, regarding Frontier's failure to serve notice of its intention to appoint First American as successor trustee, also fails. The second and third sentences of I.C. § 45–1504(2), which provide for notice, are clearly intended to apply to those situations where the trustee refuses to resign. Here, Pioneer voluntarily resigned.

■ The third assignment of error, regarding Frontier's request for issuance of the notice of default by First American, is also not error. There is no requirement that a resignation of trustee be recorded. The fact is that First American was appointed successor trustee and that appointment was recorded, thus giving First American all powers of the original trustee, I.C. § 45–1504(2), and complying with the first of three requirements before foreclosure could proceed, I.C. § 45–1505(1). Furthermore, the record shows that the notice of default was executed after Frontier had appointed First American as successor trustee.

The fourth assignment of error, regarding the appointment of First American before the recordation of Pioneer's resignation, also must fail. There is no requirement that the resignation of a trustee be recorded.

■ The fifth assignment of error, regarding deposit of the deed of trust and note with the trustee as required by the deed of trust, also fails. The record shows that First American received the notice of default, which provided that "a breach of the obligation for which such transfer has occurred ... and that the beneficiary elects to sell or cause the trust property to be sold to satisfy said obligation." Furthermore, the deed of trust does not state when the deed of trust and note must be deposited with the trustee. Based on these facts, we conclude that the district court correctly ruled that Douglass and Hassing were not

prejudiced by any delay in providing the instruments to First American.

The sixth assignment of error, regarding demand to sell upon the trustee, is also not error. Once again, Douglass and Hassing are arguing that First American was not the trustee at the time Frontier made demand upon it. As we have already held, the record clearly shows that Pioneer had resigned as trustee and that First American was properly appointed as trustee.

The seventh assignment of error, regarding a signator of the trustee's deed not signing in the presence of a notary, also fails. This argument relates only to whether the deed could be recorded and not to the validity of the deed or sale.

The eighth assignment of error, relating to execution of the trustee's deed, is simply another attack on whether First American was properly appointed as successor trustee, and, for the reasons stated above, fails.

■ The ninth assignment of error, regarding the trustee fiduciary relationship with the grantors, also fails. The record shows that First American accepted Frontier's bid of $869,000.00. Frontier, acting through First American, was the only bidder at the sale, and the trustee under the terms of the notice of sale was obligated to accept Frontier's bid. Idaho Code § 45–1506(8) dictates, *inter alia*, that: "[t]he trustee *shall* sell the property in one parcel or in separate parcels at auction to the highest bidder. Any person, including the beneficiary under the trust deed, may bid at the trustee's sale...." (Emphasis added.) In addition, I.C. § 45–1506(9) provides that "[t]he purchaser at the sale shall forthwith pay the price bid and upon receipt of payment the trustee *shall* execute and deliver the trustee's deed to such purchaser...." (Emphasis added.) Frontier was the only bidder at the sale. Thus, First American was obligated to accept Frontier's bid and deliver the trustee's deed to Frontier upon receipt of payment.

C. *Argument Regarding the District Court's Calculation of Damages.*

■ Idaho Code § 45–1512 (which is quoted above) establishes the beneficiary's

right to seek a deficiency judgment, as well as the formula for calculating that judgment. The statute states that "the plaintiff shall set forth in his [or her] complaint the entire amount for which the same was sold and the fair market value at the date of sale, together with interest from such date of sale, costs of sale and attorney fees." I.C. § 45–1512. This amount may include such items as "taxes, assessments, premiums for insurance or advances made by a beneficiary in accordance with the terms of the deed of trust...." I.C. § 45–1506(12). The district court's award complied with these limitations.

The deed of trust provides that in the event of default, the holder of the note can declare the whole amount due and payable "and the same shall thereafter bear interest at the rate of sixteen percent (16%)." The note provides for the payment of interest until the entire indebtedness is fully paid. This language clearly gives Frontier a right to receive the 16% interest it alleged in the amounts owing. We hold that Frontier is entitled to this rate of interest until the date of judgment.

D. *Frontier's Request for Attorney Fees on Appeal.*

◼ Frontier requests attorney fees on appeal pursuant to provisions in the note, deed of trust, and I.C. §§ 12–120(3) and 121.

The first provision of the note, appearing in the second paragraph on page 3, states:

Should any action be brought for the collection of any principal or interest of this Note, the undersigned promises to pay all costs thereof, including such additional sum as attorney fees as the court may adjudge reasonable.

Douglass and Hassing were the "undersigned" who promised to pay reasonable attorney fees in the event that an action was brought to collect any principal or interest. Pursuant to this provision, and because Frontier is the prevailing party on appeal, we award reasonable attorney fees on appeal to Frontier. *See Hellar v. Cenarrusa,* 106 Idaho 571, 578, 682 P.2d 524, 531 (1984) ("attorney fees are to be awarded only where they are authorized by statute or contract").

For the foregoing reasons, we affirm the decision of the district court.

Costs and attorney fees on appeal to Frontier.

JOHNSON and TROUT, JJ., concur.

BAKES, J., Pro Tem (following retirement on February 1, 1993), concurs.

BISTLINE, Justice, dissenting.

This office originally circulated to the Court membership a final draft of a proposed majority opinion, much of which now comprises this dissenting opinion. That opinion failed to obtain a majority, and now is meaningless ancient history, other than serving to demonstrate the collegiality of the Court as presently constituted. Justice McDevitt, in authoring his opinion which has gained a majority, embodies much of what this office wrote earlier.

Putting that observation aside, I add that Justice McDevitt's majority opinion is well written; it represents one view. I write to set forth my initial views which, in comparison to the opinion drafted by Justice McDevitt, primarily relate to the main issue, *i.e.,* what message did Frontier send to Douglass and Hassing in advising them that Frontier was going to sell the Douglass trust property for the purpose which Frontier stated, that is, *to satisfy such obligation.*

Justice McDevitt has written similarly:

Subdivision (3) of I.C. § 45–1505 requires that the trustee or beneficiary file a notice of default identifying the deed of trust and containing, among other things, a statement setting forth his or her 'election to sell or cause to be sold such property to *satisfy* such obligation.'

There is no ambiguity whatever in the immediately foregoing statement, and it is a true and accurate statement. It was incumbent upon Frontier to select the language it would use, and it did so. Frontier in retrospect likely would prefer that the language of I.C. § 45–1505(3) stated that the property would be sold "toward satis-

faction" of the unpaid debt. But that language was not used, and things are as Justice McDevitt states, *i.e.*, the Douglass property will be sold *to satisfy* the debt obligation of Douglass (including his co-defendants). Language clearly written, as is the above quoted sentence, leaves no room for tortuous misconstruction. Frontier complains of the statutory language because of the havoc which that language may wreak on its plan to reap yet a *second* harvest from whatever holdings Douglass and Hassing may have left. That lament would be better made to the legislature, which was the authoring body of I.C. § 45–1505(3). Equally clear, Frontier has taken no remedial action seeking the legislature's revision of I.C. § 45–1505(3), thus evidencing the wise decision to let a sleeping dog lie.

Justice McDevitt next states:

Douglass and Hassing argue that the relevant language of the notice of trustee's sale and notice of default, regarding Frontier's election to sell the property to *satisfy* the obligation, is inconsistent with I.C. § 45–1512, resulting in Frontier waiving or being quasi-estopped from asserting its right to seek a deficiency judgment. However, it is clear that the relevant language in the notice of trustee's sale and notice of default is required by I.C. § 45–1505(3). It is well settled that '[w]aiver is a voluntary, intentional relinquishment of a known right or advantage.' *Tiffany v. City of Payette*, 121 Idaho 396, 403, 825 P.2d 493, 500 (1992), quoting *Brand S. Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981). Nothing in the record before this court establishes that Frontier voluntarily and intentionally relinquished its right to seek deficiency judgment.

Little needs to be said relative to the above statement that "it is clear that the relevant language in the notice of trustee's sale and notice of default is required by I.C. § 45–1505(3)." True enough, the language so reads. It would amount to fundamental error or lack of procedural due process if a party were not given notice of a proceeding wherein he or she is involved. But the fact still remains that the statute does not speak in terms of selling such trust property and applying the proceeds toward satisfaction of the debtor's obligation. The statute speaks in terms of "selling such property to satisfy such obligation," a difference with a distinction, a distinction which Frontier is not at liberty to disregard—not if this Court is to retain its integrity.

In the paragraph above quoted, Justice McDevitt correctly illustrates the contentions of Douglass and Hassing relevant to the particular statutory language which they assert is required by I.C. § 45–1505(3). That provision requires a notice of default identifying the deed of trust, a borrower's breach, and a trustee's "election to sell or cause to be sold such property to *satisfy* such obligation." The "to satisfy" language is entirely without ambiguity; "toward satisfaction" would be equally so. Everyone knows when paying *on* an account, he or she does not pay off the account. It might be perchance that the proceeds from a mortgage foreclosure sale would satisfy the debt, but equally likely, the proceeds realized on selling out an impoverished farmer might not satisfy his or her indebtedness, in which event the forecloser may, or may not, discover other assets.

Judge Magnuson attempted to shed light on these circumstances wherein neither of the parties involved bears any responsibility for the questionably worded statute:

[T]he defendants point to the phrase: 'And that [sic, the] beneficiary elects to sell or cause the trust property to be sold *to satisfy said obligation,*' which was set forth in the closing sentence of the Notice of Default, issued by Frontier on September 7, 1988. Defendants claim the plaintiff thereby waived any claim to a deficiency judgment.

The defendants also point to the following sentence used in the Notice of Trustee's Sale:

'Said sale will be made ... *to satisfy the obligation secured by* and pursuant to the power of sale conferred in the deed of trust executed by (defendants) to (First American, as succes-

sor) for the benefit and security of (frontier) . . .'

This subject was also mentioned a second time in the Notice of Trustee's Sale, wherein it was stated:

'The beneficiary elects to sell or cause the trust property to be sold *to satisfy said obligation.*'

An examination of the Notice of Default shows the first quotation was a part of the printed form used by Frontier. Such examination of the Notice of Trustee's Sale indicates the first subject quotation therein was a part of the printed form, while the second quotation therein was set out in typewritten form.

The last three quotations above form the basis for defendants' contention that Frontier somehow waived its right to later claim a deficiency, or forfeited such right, inasmuch as these instruments did not mention or warn the defendants that a claim for deficiency may be later made against them.[2]

This Court understands these quotations regarding the 'satisfaction of obligation,' to have been used to describe the purpose of the sale, rather than to indicate, in anyway [sic], a waiver by the beneficiary of any claim to a deficiency.[3]

'Waiver' is defined by Black's Law Dictionary, Third Edition as:

'The intentional or voluntary relinquishment of a known right.'

It is distinguished from 'estoppel,' which is based on some misleading conduct or language of one person, which, being relied on, operates to the prejudice of another.

In the Idaho case of *Brand S v. King,* 103 Ida. 731 [sic 102 Idaho 731], at 734 [639 P.2d 429], it was stated that waiver is a voluntary, intentional relinquishment of a known right or advantage.[4]

In the case of *Riverside Development v. Ritchie,* 103 Ida. 515 [650 P.2d 657], the court said the existence of a waiver is ordinarily a question of fact[5] and if there

---

**2.** A foreclosing mortgagee has no obligation to give warning of an anticipated foreclosure action. It is not seen wherein Douglass raised any contention of being entitled to a warning of any kind whatever. The district court here went astray, albeit only slightly.

**3.** There is not in this paragraph a tendered explanation as to how the district judge was brought to that understanding. Nor are we able to theorize a rationale which would be apropos the particular scenario here presented. Although the trial court clearly recognized the critical importance of "to satisfy the obligation" and reviewed prior pertinent authority, not justified is the *ipse dixit* conclusion that the language of the statute was pointed at the "purpose of the sale," which purpose was clearly "to satisfy said obligation." Simply stated, the court presented no *ratio decidendi* for his "understanding." Moreover, the Douglass claim is *not as to the Frontier "intent" to waive,* but *was to the fact that it did waive,* although such was attributable to the misguidance of the statutory language.

**4.** This Court in its unanimous opinion in *Brand S v. King* did say, as the trial court here stated, "Waiver is a voluntary, intentional relinquishment of a known right or advantage." 102 Idaho at 734, 639 P.2d at 432. In the same paragraph in which is found the quotation supplied by Judge Magnuson, this Court's *Brand S* opinion went on to cite four cases from this Court, the most recent of which was *Idaho Bank of Commerce v. Chastain,* 86 Idaho 146, 383

P.2d 849 (1963), which had the same holding as *Riverside v. Ritchie,* 103 Idaho at 521, 650 P.2d at 663, note 5, *infra, i.e.,* "Waiver arising out of conduct is in the nature of estoppel."

**5.** The language used in this Court's *Riverside* opinion is:

[W]aiver is primarily a question of intent, and we believe the better policy is to judge each situation on a case by case basis. In regard to similar questions involving the theory of equitable estoppel,[5] this Court has rejected the adoption of rigid standards, relying rather on a case by case analysis, *City of Nampa v. Swayne,* 97 Idaho 530, 534, 547 P.2d 1135, 1139 (1976); *Dalton Highway Dist. of Kootenai County v. Sowder,* 88 Idaho 556, 562, 401 P.2d 813, 815–16 (1965), and we think that policy is prudent here.
[5] Waiver arising out of conduct is in the nature of estoppel. *Idaho Bank of Commerce v. Chastain,* 86 Idaho 146, 154, 383 P.2d 849, 853–84 (1963).

It is to be kept in mind that the district court, although it discussed the *Riverside* opinion, omitted any mention of footnote 5 therein and its content. Nevertheless, the district court on its reading of *Jones v. Maestas,* 108 Idaho 69, 696 P.2d 920 (1985), did observe that waiver could be found in evidence of conduct giving rise to an *estoppel* as a matter of law. Having advanced that thought, however, the court turned to the principle of waiver as discussed in *Seaport Citizens Bank v. Dippel,* 112 Idaho 736, 735 P.2d 1047 (1987), which is notable for bring-

is substantial evidence in the record to support such waiver it is for the trier of fact to determine whether the evidence establishes such waiver. In that case, both sides moved for a summary judgment on the same evidentiary facts and effectively stipulated there was no genuine issue of material fact.

The Supreme Court stated in the *Riverside* case that, where the matter is to be tried by the court rather than a jury, summary judgment still may be appropriate despite the possibility of conflicting inferences, because the court alone will be responsible for resolving the conflict between those inferences. Their review of the waiver issue extended only to determining if the record before them was sufficient to justify the district court's finding that Riverside did not waive its right to terminate the lease.... On [103 Idaho at] p. 520 [650 P.2d at 662] of their decision, they stated that waiver is foremost a question of intent, and in order to establish waiver the intention to waive must *clearly* appear.... They upheld the trial court's entry of a partial summary judgment which included a finding

that the lessor did not waive its right to terminate the subject lease.

The Idaho Court of Appeals addressed the subject of waiver in the case of *Jones v. Maestas*, 108 Ida. 69 [696 P.2d 920], which held waiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel.

In our instant case, this Court concludes there is not any clear evidence indicating waiver by Frontier or evidence of its conduct which would give rise to estoppel as a matter of law. To establish a waiver, the intention to waive must clearly appear. *Seaport v. Dippel*, 112 Ida. 736 [735 P.2d 1047] (App.).[6]

This Court concludes there was not any statutory or contractual requirement that any notice to the defendants specifically recite the beneficiary of a deed of trust intended to claim a deficiency. The Idaho legislature in enacting Section 45–1505(3) *utilized the phrase 'to satisfy such obligation' to mean the proceeds of the sale would be applied to the obligation.*[7] Their enactment of this section

---

ing to the surface *Independent Gas & Oil Co. v. T.B. Smith Co.,* 51 Idaho 710, 10 P.2d 317 (1932). In *Independent Gas* this Court's opinion dealt with distinctions between the principles of waiver and estoppel by approving and adopting Judge Robert M. Terrell's memorandum opinion denying a motion for a new trial. *Id.* at 719–24, 10 P.2d at 320–23.

The Court of Appeals' *Seaport v. Dippel* opinion was the most recent case to utilize *Independent Gas.* It also quoted a passage which it saw as applicable in the case before it for decision, and which we likewise see applicable in the instant case:

This case presents elements of both waiver and estoppel. As noted by our Supreme Court, approving and adopting the analysis of a district judge:

The only distinction that I can observe between an implied waiver such as pleaded here and estoppel would seem to be that in the case of an implied waiver there must be *some conduct on the part of the person waiving from which it may be inferred that the person waiving intended to waive;* in other words, *affirmative action on the part of the person waiving* indicating an intention to waive some benefit or advantage; whereas, in estoppel a barrier is simply set up regardless of the parties' intentions which precludes one from asserting a right which he would otherwise have but for the matters and things pleaded by the

way of estoppel, if such matters and things are properly pleaded and proven. *In other words, it is conceivable that an estoppel might sometimes apply in a case where at the same time the evidence would not support the conclusion that some right had been impliedly intentionally waived.*

*Seaport v. Dippel,* 112 Idaho at 739, 735 P.2d at 1050 (emphasis added) (quoting *Independent Gas,* 51 Idaho at 720, 10 P.2d at 321).

6. The district court is correct in relation to "waive." As to estoppel, however, it seems that the court, in concluding that evidence is missing as to a course of conduct giving rise to an estoppel, has failed to observe that the notice of default and the notice of trustee's sale, sent out by Frontier and its trustee, constitute evidence of conduct on the part of Frontier showing its intent to seek a deficiency judgment, notwithstanding the express representation in the notices that the purpose of the sale was stated as "to satisfy the obligation" of the Douglass note.

7. There is a distinction with a difference in a phrase which states "to satisfy such obligation" as compared to a phrase which states "the proceeds obtained on the sale will be applied to the balance due on the note." Had Frontier's notices contained this latter statement or similar language, it is doubted that litigation would have become necessary.

of the Idaho Code was made at the same time as they enacted Section 45-1512 Idaho Code which provides the right of a beneficiary of a trust deed to seek a money judgment for the balance due (deficiency) upon the obligation for which such deed of trust was given as security. (See Chapter 181 of the 1957 Session Laws of the State of Idaho.) The right to seek *and obtain* a deficiency judgment is provided for by Idaho statute and need not be specifically claimed or reiterated in the notice of default or notice of trustee's sale.[8]

After this Court's review of the facts presented herein, it concludes the defendants, including Harlan Douglass, were not justified in relying upon the aforesaid quotations as a waiver by Frontier of any rights it had to later seek a deficiency judgment.

This Court concludes the documents related to Pioneer's resignation as trustee, Frontier's appointment of First American as trustee, Frontier's Notice of Default and the First American's Notice of Trustee's Sale all fulfilled the requirements of the pertinent statutes or the deed of trust, and they were properly executed and recorded. All parties entitled to receive notice of these proceedings did receive such notice. The trustee's sale was properly conducted.

Judge Magnuson's Memorandum Opinion, R. 164-68 (emphasis and footnotes added). The notice of default mentioned above in Judge Magnuson's written opinion bears the signatures of two Frontier vice presidents, duly acknowledged on the same date as the instrument was executed. The district court also discussed other contentions of both parties, none of which are germane because of the dispositive conclusion which cannot be ignored relative to the waiver and/or estoppel issue.

Both notices of sale and of default correctly describe the property which Douglass deeded in trust as security for the benefit of Frontier, and its recordation. There is no issue in regard to the accuracy or validity of those notices. The total amount of the unpaid and past due obligation set forth on the notices was $1,293,-608.21, plus accruing interest, all due as of September 28, 1988.

Turning to Douglass's first contention, both Frontier's notice of default and the trustee's notice of sale contained the following language, the application of which is disputed: "[t]he beneficiary elects to sell or cause the trust property *to be sold to satisfy said obligation,*" R. Vol. I, pp. 100-01 (emphasis added), which appeared once in the notice of default as part of the printed form, and twice in the notice of sale, as part of the printed form and as a typewritten addition. In essence, Douglass contends that the language used in both of Frontier's notices inappropriately misled him into understanding that he was not going to be pursued for any resulting deficiency. Otherwise stated, his perception was that Frontier had made the determination to expose the property to public sale for whatever amount the property would fetch and forego any attempt to obtain a deficiency judgment, which might very well be valueless. Accordingly, he has asserted that the above language resulted in estoppel and/or waiver by Frontier of its right under I.C. § 45-1512 to seek a deficiency judgment after the completion of the foreclosure sale.[9] Although this procedure is available under applicable Idaho statutes, it may be given up by a specific waiver, and also by conduct amounting to estoppel or waiver. The district court, as noted herein-

---

8. The final sentence of this paragraph is overly broad in that the "right to seek a deficiency judgment" is all that the statute provides. If timely brought, "a money judgment *may be sought* for the balance due upon the obligation which such deed of trust was given as security...." There may be other obstacles which surface whenever a grantor/trustor seeks to exact a deficiency judgment.

9. As the district court correctly noted, I.C. § 45-1512 *does not require* that a creditor affirmatively reserve the right to seek a deficiency judgment; it provides that "[a]t any time within 3 months after any sale under a deed of trust ... a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security...." I.C. § 45-1512.

above, understood the contested language as serving no function other than describing the general purpose of the sale, *i.e.,* which was *that there was going to be an auction sale conducted by Frontier's appointed and instructed trustee.* Accordingly, as noted above, the court summarily determined that Frontier had not, by waiver or by conduct giving rise to estoppel, precluded itself from pursuing Douglass for a deficiency judgment.

The legal effect of an unambiguous written document is a matter of law for this Court as well as for the trial court, over which we exercise free review. *Latham v. Garner,* 105 Idaho 854, 673 P.2d 1048 (1983). The initial inquiry for determining whether a document is ambiguous is also a matter of law. *Prouse v. Ransom,* 117 Idaho 734, 791 P.2d 1313 (Ct.App.1989) (citing *Clearwater Minerals Corp. v. Presnell,* 111 Idaho 945, 729 P.2d 420 (Ct.App. 1986)).

In determining the effect of the notices of default and of sale received by Douglass, "to be sold to satisfy said obligation" is reasonably susceptible to only one meaning. "To satisfy" is not vague, unknown phraseology but has a well-settled definition known to the general populace. "Satisfy" is defined as "to carry out the terms of ... discharge ... to meet a financial obligation to (a creditor)." Webster's Third New International Dictionary (1967). Roget's Thesaurus defines "satisfy" as "[t]o supply fully or completely," and lists as synonyms, "answer, fill, fulfill, meet." Roget's II, The New Thesaurus (1980). "Satisfy" is also an established term of art in the business world and in the judiciary. Black's defines "satisfy" as "[t]o answer or discharge, as a claim, debt, legal demand or the like.... To comply actually and fully with a demand; to extinguish, by payment or performance." Black's Law Dictionary 1342 (6th ed. 1990).

Additionally, several courts have construed the term. *See Boca Ratone Co. v. Commissioner,* 86 F.2d 9 (3d Cir.1936), and *Swaner v. Union Mortgage Co.,* 99 Utah 298, 105 P.2d 342 (1940) ("satisfy" means to answer or discharge, as a claim, debt, legal demand or the like); *Waters v. Lanier,* 116 Ga.App. 471, 157 S.E.2d 796 (1967) ("satisfaction" is the discharge of an obligation by paying a party what is due him or her, as on a mortgage, lien or contract); *Pennsylvania Threshermen & Farmers Mut. Casualty Ins. Co. v. Hill,* 113 Ga. App. 283, 148 S.E.2d 83 (1966) ("satisfaction" is an acceptance of full compensation for an injury); *Jersey Island Dredging Co. v. Whitney,* 149 Cal. 269, 86 P. 509 (1906) ("satisfaction" imports a release and discharge of the obligation in reference to which it is given); *Kronebusch v. Raumin,* 6 Dakota 243, 42 N.W. 656 (1889) ("satisfaction" means to comply with the rightful demands of; to give what is due to; to pay off; to requite).

In notifying Douglass that Frontier intended to sell the property *to satisfy* the obligation owed to Frontier, Frontier implicitly represented that the debt would be thereby *discharged.* Significantly, not only was that language contained in the pre-printed forms, but it also had been manually typed on the printed form used for giving notice of trustee's sale. Douglass, in his affidavit, avers that he relied upon this language to his detriment. No conceivable reason has been advanced to demonstrate that Douglass was not entitled to rely upon words of the English language which were entirely clear as to import and which were wholly unattributable to him. As stated in Douglass's affidavit of December 6, 1989, he would have attended the foreclosure sale and entered a bid but for his reliance on the notices, which led him to believe that no deficiency judgment would be sought. That was an election which he was as equally free to make as was Frontier's election to auction the property which Douglass had deeded in trust as security protecting Frontier. Under such circumstances, he believed that he could let the property go for the amount which was against it. This Court should hold that his understanding of the notices received from Frontier and its appointed trustee was patently reasonable [10] and that

---

10. The judge's view, being that of an experienced jurist and counselor learned in the law,

Frontier is estopped from pursuing a deficiency judgment under both estoppel and the equitable doctrine of quasi estoppel.

Unlike waiver, which requires a voluntary and intentional relinquishment of a known right or advantage, quasi estoppel is not dependent on intent. *Keesee v. Fetzek,* 111 Idaho 360, 723 P.2d 904 (Ct.App. 1986).[11] Moreover, "concealment or misrepresentation of existing facts on the one side, or ignorance or reliance on the other is a necessary ingredient." *Id.* at 362, 723 P.2d at 906 (citing *Evans v. Idaho State Tax Commission,* 97 Idaho 148, 540 P.2d 810 (1975)); *see Theriault v. A.H. Robins Co.,* 108 Idaho 303, 698 P.2d 365 (1985). Quasi estoppel simply "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him." *Id.* 111 Idaho at 362, 723 P.2d at 906 (quoting *KTVB, Inc. v. Boise City,* 94 Idaho 279, 281, 486 P.2d 992, 994 (1971)). The requirements for the application of quasi estoppel are that the party against whom it is asserted has previously taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the party seeking application of the doctrine. *KTVB, Inc. v. Boise City,* 94 Idaho 279, 486 P.2d 992 (1971).

The Court should find that the elements of quasi estoppel have been satisfied. With full awareness of its statutory right to seek a deficiency judgment, Frontier inserted language into its notices of default and sale, which language was inconsistent with later pursuing Douglass for a defi-

ciency judgment. Actual reliance, although not necessary to quasi estoppel, *see Keesee,* has been established by Douglass's affidavit statement that the notices led him to forego appearing and bidding at the sale. By causing such a detriment to Douglass, Frontier has limited itself to foreclosure of the property. To hold otherwise would work an unconscionably harsh disadvantage upon Douglass.

The Court should conclude that Frontier is precluded from being awarded a deficiency judgment. The Court should further hold that the elements of both estoppel and quasi estoppel are satisfied. The judgment of the district court should be reversed and the cause remanded with directions to enter judgment in favor of Douglass for costs and attorney fees.

BISTLINE, Judge, dissenting on denial of petition for rehearing.

## PART I.

Deserving of a just resolution is the defendants/borrowers' contention that they were misled by the plaintiff/lender, Frontier, into the understanding that Frontier would not pursue them for the entry of a deficiency judgment for the unpaid balance due Frontier Federal after it foreclosed on the encumbered property of the defendants. It is abundantly clear, and beyond cavil, that "the beneficiary" informed the Douglasses and Hassing that it had elected "to sell or cause the trust property to be

---

naturally differed from the Douglass view, which was that of one not so knowledgeable in the law.

**11.** *Keesee* is practically on all fours with the underlying circumstances. In that controversy, as here, the transaction went awry when the buyer, Fetzek, who was purchasing on an installment contract, defaulted:

> But here reliance has been established. It is undisputed that the buyer, who had cured an earlier default in response to a notice referring to 'other' remedies, decided to forego curing the default in this instance because the sellers' notice told him that the consequence for not curing would be forfeiture—a consequence he was willing to accept. The buyer claims—and it is uncontroverted—that if 'other' remedies had been mentioned, he would

have cured the default and this lawsuit would have been avoided.

> Accordingly, we hold that quasi estoppel may be applied to this case. We further hold that the elements of quasi estoppel are satisfied here. The sellers have changed their position, subjecting the buyer to the expense of avoidable and unwanted litigation. Moreover, they now seek to collect the balance of the contract, whereas previously the buyer would have been required only to cure the then existing default. The buyer has been unfairly prejudiced, and stands to suffer an unconscionable detriment, as a result of the sellers' change in position. We conclude that quasi estoppel, accompanied in this case by reliance, justifies limiting the sellers to their original choice of forfeiture as a remedy.

*Keesee,* 111 Idaho at 362–63, 723 P.2d at 906–97.

sold to *satisfy* said obligation." Nothing could have been more certain than Frontier's statement of the election thus made. The Douglasses and Hassing were entitled to believe that the loss of their encumbered assets, i.e., the trust property, would be sold in satisfaction of their obligation.

The majority, apparently believing itself obliged to come to the rescue of Frontier Federal Savings, predicates its contrary position on the slim hypothesis that: "Every time a beneficiary or trustee complied with the requirements of I.C. § 45–1505(3), they [beneficiary or trustee] would not be permitted to seek deficiency judgment after the sale because, as [defendants] argue, they would have agreed to accept the amount received at the sale in full satisfaction of the obligation." 123 Idaho at 812, 853 P.2d at 557. That statement is accepted as sound. It is the resultant reality encountered by Frontier Federal in blindly falling into the pitfall which resulted from the legislature's poor choice of language in drafting and enacting I.C. § 45–1505.

It is submitted that any attorney who is to some extent conversant with the English language, and possessed of reasonable schooling in the processes of the law, would readily see there is in fact and in truth only one correct reading of that passage. Nevertheless, the majority opinion encounters no problem in avoiding the irrefutable fact that neither plaintiff Frontier nor the Court majority are at liberty to ignore the language found in Frontier Federal's foreclosure notice: "Pursuant to I.C. § 45–1505, the trustee or beneficiary elect[s] to sell or cause to be sold such property to satisfy such obligation." The majority declines to come to grips with the realization that Frontier Federal, had it stated in its notices of default and sale that it elected to sell the trust property *toward* satisfaction of such obligation, would not have found itself thereafter beset, besieged, and beleaguered. If, perchance, the sale netted enough cash return to pay the due amount of defendants' indebtedness, then in that event no further proceedings would be required.

In what is now ch. 15, TRUST DEEDS, particularly I.C. § 45–1505 (Vol. 8A), is found the identical language which first appeared in ch. 18, § 5(3) of the Idaho Code, *approved* upon enactment by declaration of an emergency, March 9, 1957:

(3) The trustee or beneficiary shall have filed for record in the office of the recorder in each county wherein the trust property, or some part or parcel, is situated, a notice of default identifying the deed of trust by stating the name or names of the trustor or trustors and giving the book and page where the same is recorded, or a description of the trust property, and containing a statement that a breach of the obligation for which the transfer in trust is security has occurred, and setting forth the nature of such breach and *his election to sell or cause to be sold such property to satisfy such obligation*; and a copy of such notice by registered or certified mail to any person requesting such notice of record as hereinafter provided.

Apparently it never occurred to the legislative personnel employed to draft the above that there could be foreclosure actions other than for *total* satisfaction of the borrower's indebtedness. Whoever sponsored the legislation obviously did not oversee the selection of language relative to foreclosing. Otherwise put, it is not inconceivable, but indeed likely that there have been other foreclosures whereat the lender knew and realized that a fair way to treat an impecunious borrower would be to pursue what monies could be obtained, and in that way strive to obtain some remuneration for application on the indebtedness due, i.e., *toward* satisfaction of the indebtedness rather than in *full* satisfaction.

In any event, it is abundantly clear that for a long period of time, extending from enactment of I.C. § 45–1505 in the spring of 1957 to midsummer of this year 1993, a lapse of over thirty-six years, I.C. § 45–1505 has remained intact as it was first written. Moreover, it is clear and unambiguous. For over the span of more than one-third of a century that statute has provided the right in the lender to foreclose a trust deed by advertisement and sale, pro-

vided that the lender (or his trustee or beneficiary), has complied with the requirements of I.C. § 45–1505, i.e., the proper filing of a notice of default which identifies the deed of trust by providing the name or names of the trustor or trustors, and giving the book and page where the same is recorded, stating the nature of the breach and his election to sell or cause to be sold such property to satisfy such obligation.

Unfortunately, so it would seem, Frontier Federal did not pause to consider available options, one of which was to *not* make an "election to sell or cause to be sold such [trust] property to satisfy such obligation." The obligation was simply that Hassing and the Douglasses were indebted to Frontier Federal, and not in any position to avoid the foreclosure being visited upon them, according to the provisions of I.C. § 45–1505.

For the reasons above and those stated in my dissenting opinion to this Court's 1993 Opinion No. 41, issued April 23, 1993, I would grant rehearing.

## PART II.

Defendants-appellants' counsel on rehearing, Bobbi K. Dominick, a gifted writer, has researched the very narrow, single issue which is before us, and favors the Court with a well-written, fair, and dispassionate overview of the singularly not complex litigation, which is readily adopted and incorporated herein as Appendix A.

## APPENDIX A.

### A. STATEMENT OF THE ISSUES

Appellants, pursuant to Rule 42 of Idaho Appellate Rules, petitioned this court for a rehearing on the following issues:

(1) Did Douglass (appellants') have a right to rely on the clear, unambiguous language of the Notice of Sale which stated the property would be sold to "satisfy" the underlying obligation, thereby precluding Frontier Federal by waiver or quasi-estoppel, from asserting any right to a deficiency judgment?

(2) Under the circumstances of this case, with no evidence to rebut actual reliance, and evidence of inconsistent positions of Frontier Federal, is Frontier Federal estopped, by application of the doctrine of estoppel or quasi-estoppel, to deny Douglass' right to rely on the plain, unambiguous language of the Notice of Sale?

(3) Was Douglass denied his Constitutional right to due process?

### B. ARGUMENT

The majority opinion justifies their decision by relying on provision (3) of I.C. § 45–1505. The court asserts that this statute authorizes the trustee or beneficiary to file a Notice of Default identifying the deed of trust and containing, among other things, a statement setting forth his or her 'election to sell or cause to be sold such property to *satisfy such obligation*' (emphasis added). The court stated in its majority opinion:

> However, it is clear that the relevant language in the notice of trustee's sale and notice of default is required by I.C. § 45–1505(3).

The majority further states that if Douglass' argument was correct, I.C. § 45–1505(3) would render I.C. § 45–1512 (the deficiency statute) meaningless.

At most, the statute applies only to a Notice of Default, however, the Court extended the statute to apply to the Notice of Trustee's Sale. There is no question that provision (3) of I.C. § 45–1505 is clear and applies only to a Notice of Default. However, the Court in its majority opinion incorrectly extended the application of the statute to the Notice of Sale.

In these proceedings, Douglass relied upon the Notice of Sale principally and secondarily on the Notice of Default. Douglass stated in his affidavit that he relied upon the unequivocal language in the Notice of Sale, to his detriment. This statement is uncontroverted, undisputed and is an established fact.

Douglass asserts I.C. § 45–1505(3) is clear and that Douglass took the language in the Notice of Sale literally to mean that the property was sold to 'satisfy' the un-

derlying obligation. This language did not authorize a deficiency action by Frontier. The language has no other interpretation. Justice Bistline in his dissent states:

> In determining the effect of the notices of default and of sale received by Douglass, "to be sold to satisfy said obligation" is reasonably susceptible to only one meaning. "To satisfy" is not vague, unknown phraseology but has a well-settled definition known to the general populace. "Satisfy" is defined as "to carry out the terms of ... discharge ... to meet a financial obligation to (a creditor)." Webster's Third New International Dictionary (1967). Roget's Thesaurus defines "satisfy" as "[t]o supply fully or completely," and lists as synonyms, "answer, fill, fulfill, meet." Roget's II, The New Thesaurus (1980). "Satisfy" is also an establish term of art in the business world and in the judiciary. Black's defines "satisfy" as "[t]o answer or discharge, as a claim, debt, legal demand or the like ... To comply actually and fully with a demand; to extinguish, by payment or performance." Black's Law Dictionary 1342 (6th ed. 1990).

> Additionally, several courts have construed the term. *See Boca Ratone Co. v. Commissioner*, 86 F.2d 9 (3d Cir. 1936), and *Swaner v. Union Mortgage Co.*, 99 Utah 298, 105 P.2d 342 (1940) ("satisfy" means to answer or discharge, as a claim, debt, legal demand or the like); *Waters v. Lanier*, 116 Ga.App. 471, 157 S.E.2d 796 (1967) ("satisfaction" is the discharge of an obligation by paying a party what is due him or her, as on a mortgage, lien or contract); *Pennsylvania Threshermen & Farmers Mut. Casualty Ins. Co. v. Hill*, 113 Ga.App. 283, 148 S.E.2d 83 (1966) ("satisfaction" is an acceptance of full compensation for an injury); *Jersey Island Dredging Co. v. Whitney*, 149 Cal. 269, 86 P. 509 (1906) ("satisfaction" imports a release and discharge of the obligation in reference to which it is given); *Kronebusch v. Raumin*, 6 Dakota 243, 42 N.W. 656 (1889) ("satisfaction" means to comply with the

rightful demands of; to give what is due to; to pay off; to requite).

In notifying Douglass that Frontier intended to sell the property *to satisfy* the obligation owed to Frontier, Frontier implicitly represented that the debt would be thereby *discharged*. Significantly, not only was that language contained in the preprinted forms, but it also had been manually typed on the printed form used for giving notice of trustee's sale. Douglass, in his affidavit, avers that he relied upon this language to his detriment. No conceivable reason has been advanced to demonstrate that Douglass was not entitled to rely upon words of the English language which were entirely clear as to import and which were wholly unattributable to him. As stated in Douglass's affidavit of December 6, 1989, he would have attended the foreclosure sale and entered a bid but for his reliance on the notices, which led him to believe that no deficiency judgment would be sought.

It was clear to Douglass, who is entitled to due process, that the trust property was to be sold to satisfy the obligation to Frontier.

Justice Bistline also stated that by applying Idaho law to the facts in these proceedings, quasiestoppel should apply against Frontier to preclude Frontier from any additional action for deficiency against Douglass. *See KTVB, Inc. v. Boise City*, 94 Idaho 279, 486 P.2d 992 (1971); *Keesee v. Petzek*, 111 Idaho 360, 723 P.2d 904 (Ct. App.1986).

Douglass petitions this Court to follow the dissenting opinion by holding that Douglass relied to his detriment on Frontier's notices and that Frontier is limited to foreclosure of the property. It is not the duty of the Court to legislate; this power is left to the legislature. The function of the Court is to construe the Notice of Trustee's Sale as given. Neither the Notice of Trustee's Sale nor the Notice of Default gave Douglass proper notice of a possible deficiency judgment, only that the sale was satisfying the obligation.

The Court's decision to read I.C. § 45–1512 and I.C. § 45–1505(3) together denies Douglass his right to due process. The Fourteenth Amendment to the United States Constitution provides in part that no 'state (shall) deprive any person of life, liberty, or property, without due process of law ...' By uncontroverted affidavit, Douglass alleges that he relied upon the clear wording of the Notice of Trustee's Sale to his detriment. Douglass has been deprived of his property without proper due process of law.

It has been recognized that 'parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1864). It has also been held that the fundamental requisites of due process are 'the opportunity to be heard.' *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). Therefore, 'at a minimum' the Fourteenth Amendment due process clause requires that a deprivation of life, liberty or property must be preceded by 'notice and opportunity for hearing appropriate to the nature of the case.' *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In addition, such notice 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Explaining the fundamental requirements of procedural due process, the United States Supreme Court set forth the following standard:

> (D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.

*Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). Douglass was denied his constitutional right to proper notice. The Court should not place its stamp of approval on a faulty statute. By Douglass' uncontroverted affidavit, he explained that he would have attended the foreclosure sale and bid on the property had he known that a deficiency judgment was possible. Such lack of notice in the Notice of Trustee's Sale is a blatant violation of Douglass' right to due process guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 13 of the Idaho State Constitution.

Under both the Idaho and United States Constitutions the right to procedural due process is guaranteed, requiring that a person involved in the judicial process be given meaningful notice and a meaningful opportunity to be heard. *Rudd v. Rudd*, 105 Idaho 112, 666 P.2d 639 (1983).

Idaho law states that the fact that the Idaho Constitution contains a due process clause with the same language found in the Fourteenth Amendment to the Constitution of the United States indicates that the drafters of the Idaho Constitution believed that the federal due process clause did not make it unnecessary for the Idaho Constitution to guarantee due process of law. *Cootz v. State*, 117 Idaho 38, 785 P.2d 163 (1989).

Also, according to Idaho law the right to use one's property in a lawful manner is within the protection of Section 1 of the Fourteenth Amendment of the Constitution of the United States, and this section providing that no person shall be deprived of life, liberty or property without due process of law. *O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401 (1949). Additionally, the Idaho courts have explained that the fundamental requirement of due process is the opportunity to be heard in a meaningful manner. *Sweitzer v. Dean*, 118 Idaho 568, 798 P.2d 27 (1990).

In the consolidated cases of *Fuentes v. Shevin* and *Parham v. Cortese*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the United States Supreme Court reviewed the constitutionality of state laws permitting the summary seizure of goods or chattels under a writ of replevin. In this case the Court stated:

[T]he statutes provide for the issuance of writs ordering state agents to seize a person's possessions, simply upon the ex parte application of any other person who claims a right to them and posts a security bond. Neither statute provides for notice to be given to the possessor of the property, and neither statute gives the possessor an opportunity to challenge the seizure at any kind of prior hearing.

*Fuentes v. Shevin, supra* at 69, 92 S.Ct. at 1988.

As in Fuentes, I.C. § 45–1512 and I.C. § 45–1505, even when construed together allow the state to seize Douglass' possessions by Frontier's ex parte application. As in *Fuentes*, Douglass' due process is violated because these statutes do not give Douglass 'an opportunity to challenge the seizure at any kind of prior hearing.'

The United States Supreme Court has also explained that

[D]ue process is afforded only by the kinds of "notice" and "hearing" that are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property
. . .

*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 343, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969). In effect, the Court's decision allowing a deficiency judgment against Douglass without proper notice equates to unconstitutional summary seizure of Douglass' property (the amount of the deficiency judgment). The statutory scheme of I.C. § 45–1512 and I.C. § 45–1505 is constitutionally defective by failing to provide proper notice as required by procedural due process.

The majority [of the] court, by construing the two statutes together, fails to rectify the inadequate notice and ensure that constitutionally required procedural safeguards are followed. The Court should properly conclude that the statutory language used in the Notice of Trustee's Sale denies Douglass his right to due process by insufficient notice.

The Court should not disregard the U.S. Constitution and Douglass' Fourteenth Amendment Rights in interpreting I.C. § 45–1505(3). The language was plain and simple, and the Court can come to only one logical conclusion: the property was sold to satisfy the obligation.

An analogy can be drawn from the example of when a person is served with a summons and complaint. He has the right to rely solely on the clear meaning of its language or otherwise he is denied due process.

The Court's majority opinion states that in order to get the full meaning of the Notice of Trustee's Sale, I.C. § 45–1505 and I.C. § 45–1512 'must be construed together.' In effect the Court is ruling that a person cannot rely on the clear language of a Notice of Trustee's Sale. The Court's ruling requires that in order for a person to be properly notified of an impending foreclosure action against him he must additionally look to I.C. § 45–1505 and then construe it together with I.C. § 45–1512. Once he has construed the statutes, he must conclude that the language of the Trustee's Notice of Sale to satisfy the obligation does not really mean to 'satisfy' the obligation, but means that a deficiency judgment can also be brought against him. This is *not* proper notice.

The Court's decision defeats the purpose and intent of the Notice of Trustee's Sale. No statutes were served on Douglass. Douglass should not be penalized because he relied on the Notice of Trustee's Sale and did not seek out additional statutory law and then 'construe' the statutes together for proper notice. Douglass acted properly by relying *solely* on the Notice of Trustee's Sale and should not be denied his Constitutional right to due process as a result.

## C. CONCLUSION

Douglass justifiably relied upon the clear statutory language inserted into the Notice of Trustee's Sale and Notice of Default stating that the sale of the property was to 'satisfy' the obligation. The meaning of

'satisfy' is clear and unambiguous as explained by Justice Bistline's dissent.

I.C. § 45–1512 and I.C. § 45–1505 unconstitutionally deprive Douglass of his right to due process by not affording him proper notice of the deficiency judgment. The Court should adopt the minority opinion and find that the Notice of Trustee's Sale in these proceedings precludes Frontier's recovery of a deficiency judgment. The petition for rehearing should be granted.

Respectfully submitted this 20th day of May, 1993.

ELAM, BURKE AND BOYD, Chartered

. . . .

By /s/ Bobbi K. Dominick

DELAY, CURRAN, THOMPSON & PONTAROLO, P.S.

. . . .

By /s/ Joseph P. Delay

Joseph P. Delay, WSBA No. 02044
Attorneys for Appellants
Douglass and Hassing